Joseph **COLOSIMO** and Lorraine Colosimo, parents and natural guardians of John A. Colosimo, a minor, and Joseph Colosimo and Lorraine Colosimo, in their own right, Plaintiffs,

v.

The **MAY DEPARTMENT STORE COMPANY**, a corporation, Defendant and Third-Party Plaintiff,

v.

Mr. and Mrs. James P. **HUGHES** and Muskin Manufacturing Company, Third-Party Defendants.

Civ. No. 67–8.

United States District Court, W. D. Pennsylvania.

April 2, 1971.

P. J. McArdle, Pittsburgh, Pa., for plaintiffs.

Thomas J. Reinstadtler, Jr., Pittsburgh, Pa., for May Dept. Store Co.

A. Ralph Ellis, Pittsburgh, Pa., for Muskin Mfg. Co.

## MEMORANDUM

SORG, District Judge.

John Colosimo—age 15 years, height 5 feet 6 inches, weight 140 pounds—was invited, on July 21, 1965, by neighbors, Mr. and Mrs. James Hughes, to swim in an above-the-ground vinyl-lined family pool which they had just assembled in their back yard. The pool was 12 feet in diameter and 36 inches in height. An A-ladder type arrangement 38 inches high with an 18 inch by 14 inch platform on top straddled the side of the pool to facilitate entry and departure. John approached the pool, ascended the ladder, assumed a position on the platform with hands extended in front of him and dived head first into the water. As he struck bottom his hands slipped from under him causing his head to contact the floor of the pool with sufficient force to bring about serious injuries to his cervical spine.

A short time before, Mrs. Hughes, attracted by a newspaper ad, had visited the toy department of Kaufmann's, a branch of the defendant May Department Store Company, (May Company) in Pittsburgh, Pa., observed an assembled family pool unit as pictured in the ad, and signed a purchase order. The pool was delivered by Kaufman's warehouse to the Hughes residence in the original cartons shipped to it by Muskin Manufacturing Company (Muskin), producer. It was assembled by Mr. and Mrs. Hughes according to the instructions which accompanied the packages, and filled with water on the day of John Colosimo's accident.

This action to recover damages arising from personal injuries was brought by John Colosimo and his parents against May Company, seller of the pool, on the theory of product liability set forth in Section 402(A) of the Restatement of Torts (2d), as follows:

"One who sells any product in a defective condition unreasonably dangerous to the user or consumer * * * is subject to liability for physical harm thereby caused to the ultimate user or consumer * * *, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold."

May Company filed a third-party complaint for indemnity against its supplier, Muskin, and against Mr. and Mrs. Hughes for contribution by reason of alleged negligence on their part. Upon trial of the issue of liability only a jury

returned the following answers to interrogatories:

"1. Were the injuries which were sustained by John Colosimo on July 21, 1965, caused by a defective condition of the pool unreasonably dangerous to John Colosimo at the time he dived into it?

Answer YES or NO _____ (YES) _____

2. Were John Colosimo's injuries sustained as a result of his having assumed the risk of a known danger?

Answer YES or NO _____ (NO) _____

3. Did The May Department Store Company purchase the pool from Muskin Manufacturing Company in the same condition in which it was sold by The May Department Store Company to Mr. & Mrs. Hughes?

Answer YES or NO _____ (YES) _____

4. Was there any negligence on the part of Mr. and/or Mrs. Hughes which was a proximate cause of the accident which occurred on July 21, 1965?

Answer YES or NO _____ (NO) _____

Damages were later assessed by the jury in the amount of $100,000.00 in favor of the minor-plaintiff and in the amount of $25,000.00 in favor of the parent-plaintiffs. Judgments were entered in favor of the plaintiffs and against defendant May Company in the total amount of $125,000.00, and in favor of May Company, third-party plaintiff against Muskin, third-party defendant, in the same amount. Both May Company and Muskin have moved for judgment n. o. v., challenging the applicability of Section 402(A) Restatement of Torts (2nd) as a matter of law. Both contend that the evidence fails to disclose a "dangerously defective" product and that it clearly establishes a voluntary "assumption of risk" on the part of John Colosimo. Muskin also asserts a lack of evidence that the product left its hands in the same condition which existed at the time of the accident. Muskin further assigns as error its treatment as an indemnitor.

A finding by the jury that the contents of the cartons were not changed in any material respect from the time they were packaged by Muskin until removed by Mr. & Mrs. Hughes was clearly warranted. That the liner was wet when the accident occurred must obviously be considered the result of normal use. On another point, a voluntary assumption of risk presupposes knowledge of existing conditions, for it encompasses the testing of a known danger. There is no evidence in this case from which knowledge before his accident of conditions at the bottom of the pool could be imputed to John Colosimo. The contentions of defendants based on the assumption of risk defense and Muskin's assertions concerning the condition of the product as marketed by it, are clearly without merit.

The critical issues, then, may be stated as follows:

1—Did John Colosimo, as a matter of law, put the pool to an abnormal use by diving head-first into 30 inches of water from a point approximately 8 inches above its surface?

2—Was there sufficient evidence to warrant submission to the jury of a question concerning the alleged "dangerously defective condition" of the pool?

3—Is a seller entitled to indemnity from the supplier of a product for losses sustained as the result of physical harm to a purchaser or user which is caused by a dangerously defective condition of the product?

In Bartkewich v. Billinger, 432 Pa. 351, 247 A.2d 603 (1968), the court directed judgment n. o. v. on the claim of a factory worker who inserted his hand into a glass breaking machine to remove a piece of glass in order to prevent jamming of the machine, stating:

"Appellant [manufacturer] was entitled to believe that the machine would be used in its usual manner, and need not be an insurer for the extraordinary risks an operator might choose to take.

* * * * * *

"If he [user] thought the machine was being damaged, what did he think would happen to his hand? It is unfortunate that appellee incurred a serious injury, but we do not believe that appellant was obligated to build a machine that was designed not only to keep glass in, but also to keep people out. * * *"

■ In Greco v. Bucciconi Engineering Co., 407 F.2d 87 (3 Cir. 1969), it was held in the case of another workman who inserted his hand into a steel sheet piling machine that a jury issue arose concerning the reasonableness of his doing so. Under the circumstances of Bartkewich v. Billinger, supra, plaintiff's conduct was considered an obvious misuse of the product, while, in *Greco,* the plaintiff's actions were not deemed so obviously extraordinary. It appears, therefore, that a proper test to be applied in determining the matter of "abnormal use" is the reasonable foreseeability on the part of a manufacturer of the use to which his product would be put. Both "reasonableness" and "foreseeability", where reasonable minds may differ, are typical jury questions. Whether or not John Colosimo's unfortunate dive amounted to an abnormal use of the pool was an issue upon which reasonable men could very well differ, and, hence, required determination by the jury.

■ In the matter of the condition of the pool at the time of the accident, the plaintiffs introduced expert testimony relating only to the design of the pool, apparently for the purpose of establishing that the ladder assembled into the pool unit resembled a diving platform and thus created an inducement to the users of the pool to do precisely what John Colosimo did—to dive. They also introduced evidence on the part of several witnesses that at the time of the accident the bottom of the pool was slippery, in addition to John Colosimo's testimony that his hands slipped apart. It must be conceded that in and of itself the testimony of plaintiffs' expert, relating as it did to conditions which were manifest to any user of the pool, was not sufficient to support the finding of a dangerously defective condition. Such testimony, however, was not irrelevant when placed in context with the testimony of other witnesses outlining all the surrounding circumstances. None of the components of the pool were available for inspection at the time this action was commenced. Consequently, no expert testimony was introduced by any of the parties that might be of assistance in determining the chemical composition of the particular pool liner involved or its frictional characteristics when covered with treated or untreated water of the kind that might be used to fill the pool. The plaintiffs were limited, then, to a description of the pool floor as "slippery" by several users and minor-plaintiff's testimony that his hands "flew right out." Although there was conflicting evidence on this point—the evidence favorable to the plaintiff prevails for present purposes. An inference by the jury that John Colosimo's head struck the bottom of the pool as a result of the skidding of his hands on a slippery component of the pool was warranted. A finding that this constituted a malfunction in the course of the pool's normal usage was also properly attainable. That evidence of malfunction may constitute sufficient proof of a dangerously defective condition is well established. In Bialek v. Pittsburgh Brewing Co., 430 Pa. 176, 242 A.2d 231 (1968), which dealt with an exploded bottle, it was held that the explosion itself evidenced a defect, even though no specific defect in the composition of the bottle could be developed by expert testimony or otherwise. Here again, this issue in the case at bar lent itself to legally permissible conclusions upon which reasonable minds could differ—a jury question. Then, too, the jury's answers in this case concerning the issues on seller liability under Section 402(A) are consistent with and justified under the policy announced in Comment c. to the Sec-

tion, Restatement of Torts (2d) pp. 349–350:

"On whatever theory, the justification for the strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products."

Greco v. Bucciconi, supra, is most helpful also on the question of producer or supplier indemnity, the third of the problems stated above. It states:

"Because Wean [a middle-man] never handled the piler * * * the district court correctly held that Wean should be indemnified for breach of Bucciconi's warranty of merchantability. Cf. Tromza v. Tecumseh Products Co., 378 F.2d 601 (C.A.3, 1967). See Prosser, The Fall of the Citadel (Strict Liability to the Consumer), 50 Minn.L.Rev. 791, 848 (1966); Wade, Strict Liability of Manufacturers, 19 Sw.L.J. 5, 24 (1965)."

The motions for judgment n. o. v. will be denied.

Muskin has moved for a new trial alleging, inter alia, error in the exclusion of proffered testimony on its behalf that it had never received a report of the type of accident involved in this case and in the admission of expert testimony adduced by the plaintiff with respect to the design of the pool. As commented above, the latter was deemed admissible for the purpose of describing conditions relating to issues other than defects, such as the circumstances that might be enlightening in the matter of minor-plaintiff's conduct and its foreseeability. Although it may be contended that Muskin's testimony was also relevant to the issue of foreseeability as well as the condition of the pool, it should be noted that the evidence offered did not relate in any way to the composition or batch of material incorporated in the particular pool involved and that Muskin was never charged with actual notice of the propensity of its product. The proof offered was not competent and would have been prejudicial to the plaintiffs anent the slippery condition of the pool in issue. On the other hand, Muskin was not held accountable for negligence but for the characteristics of its product even though it "has exercised all possible care in the preparation and sale of [its] product. * * *" Section 402(A) (2) (a), Restatement of Torts (2d). Hence, the probative value of lack of notice was outweighed by its potentially prejudicial effect.

To the extent that the remaining points raised by Muskin in support of its motion for a new trial are not disposed of under the foregoing discussion with respect to its motion for judgment n. o. v., they are deemed to be without merit.