# MORAN, ETC., ET AL. *v.* FABERGÉ, INC. ET AL.

[No. 23, September Term, 1974.]

*Decided February 3, 1975.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Martin H. Freeman,* with whom were *Bulman, Goldstein, Feld & Dunie* on the brief, for appellants.

*James P. Salmon,* with whom were *Sasscer, Clagett, Channing & Bucher* on the brief, for appellees.

DIGGES, J., delivered the opinion of the Court. O'DONNELL, J., dissents and filed a dissenting opinion at page 555 *infra.*

In this case, which is here on certiorari addressed to the Court of Special Appeals, the petitioner, Nancy Moran,[1] takes issue with the affirmance by that court of the judgment n.o.v., entered in the Circuit Court of Prince George's County (Couch, J.), which nullified the jury's decision that Fabergé, Inc., the respondent, was accountable in damages for Nancy's injuries caused when its cologne,

---

1. The petitioner, a minor at the time the action was filed, initiated this suit through her father, Elbert M. Moran. The father also joined to recover the medical expenses he incurred for the treatment of his daughter's injuries. Besides Fabergé, there were also two other defendants — Randy Williams, a young lady who was involved in the events which led to Nancy's injuries, and Louis P. Grigsby, the owner of the home where the accident which caused the injury occurred. Since defendants Williams and Grigsby were exonerated by the jury from legal responsibility for the injuries and no question is raised here concerning this result, the only defendant which remains in the litigation before this Court is the respondent, Fabergé.

with no flammability warning on its container, ignited.[2] We believe that there was sufficient evidence presented to authorize the jury's decision and, therefore, we will reinstate the verdict and direct that judgment be entered on it.

As we explain our reasons for this conclusion, it must be borne in mind that since this case is before us on the propriety of the granting of a motion for judgment n.o.v., we are required to review the evidence presented in the light most favorable to the petitioner. *Lusby v. First Nat'l Bank*, 263 Md. 492, 499, 283 A. 2d 570 (1971); *I.O.A. Leasing v. Merle Thomas Corp.*, 260 Md. 243, 248-49, 272 A. 2d 1 (1971); *Smith v. Bernfeld*, 226 Md. 400, 405, 174 A. 2d 53 (1961). When so considered we learn that on the fateful night of June 8, 1969, Nancy Moran, then 17 years old, visited the home of Mr. and Mrs. Louis P. Grigsby in Hillcrest Heights, Maryland, to meet with a number of friends, including Randy Williams, a young lady of 15 years, who was residing with the Grigsbys at the time. The group congregated in the basement which was being maintained partly as a family clubroom and partly as a laundry room. After listening to music for some time on that warm summer night (estimated to be 72-73° F.), everyone left the basement, except Nancy and Randy. Apparently these two girls were at a loss for

---

2. The case was wisely submitted on special issues, which, together with the jury's answers to them, are as follows:

"1. Do you find the defendant Randy Williams guilty of negligence proximately causing the injury to Nancy Moran? Yes or No. (Verdict: *No*)

2. Do you find the defendant, Fabergé, guilty of negligence proximately causing the injury to Nancy Moran? Yes or No. (Verdict: *Yes*)

If your answers to questions 1 and 2 are "no," you need not answer any further questions.

If, however, your answer to either question 1 or 2 is "yes," then you must answer question 3.

3. Do you find the plaintiff, Nancy Moran, guilty of negligence contributing to her own injury? Yes or No. (Verdict: *No*)

If your answer to question 3 is "yes," then you need not answer any further question.

If your answer to question 3 is "no," then you must answer question 4.

4. How do you assess damages?

For Nancy Moran:  ($27,000.00)
For Mr. Moran:    ($ 2,701.34)"

entertainment as eventually they centered their attention on a lit Christmas-tree-shaped candle which was positioned on a shelf behind the couch in the clubroom. Possibly because "the idle mind knows not what it is it wants"[3] the girls began to discuss whether the candle was scented. After agreeing that it was not, Randy, while remarking "Well, let's make it scented," impulsively grabbed a "drip bottle" of Fabergé's Tigress cologne, which had been placed by Mrs. Grigsby in the basement for use as a laundry deodorant, and began to pour its contents onto the lower portion of the candle somewhat below the flame. Instantaneously, a burst of fire sprang out and burned Nancy's neck and breasts as she stood nearby watching but not fully aware of what her friend was doing.

During the trial the petitioner introduced evidence, which was not disputed, tending to show that, though no warning of the fact was attached to the bottle or otherwise given, Fabergé's Tigress cologne was highly flammable and, therefore, inherently dangerous.[4] To demonstrate this the petitioner produced scientific experimental evidence revealing that this cologne, composed of, by volume, 82.06% alcohol, 5.1% perfume and oils, and 12.84% water, is a dangerously combustible product with a flash point of 73° Fahrenheit, approximately room temperature.[5]

Additionally, the petitioner evoked testimony from two Fabergé officials, Carl Mann, its Vice President and Chief Perfumer, and Stephen Shernov, a company aerosol

---

3. *Cicero, De Divinatione*, bk. II, ch. 13, quoting the poet Quintus Ennius.

4. Such a warning, however, is placed on Fabergé's Tigress aerosol spray cologne. According to the respondent, the spray container has a warning while the "drip bottle" does not because the spray has a freon propellant and thus is chemically different.

5. Utilizing the American Standard Testing Materials' scientific method of determining the flash point, the tester proceeds as follows: the liquid to be tested is poured into a glass cup surrounded by a water bath; a thermometer is kept in the fluid to check its temperature as the water bath is slowly heated; and, starting at 40° Fahrenheit but increasing the temperature by increments of 2 degrees at a time, the tester passes a wand with an eighth of an inch gas-fed bead flame over the liquid in the cup at a height of one-quarter inch above the surface of the liquid being tested. The temperature of the liquid at which its vapors are ignited constitutes its flash point. In this case the test was run six times by an expert in order to obtain an average flash point.

chemist, which indicated that not only was the manufacturer aware of this hazardous quality but also Fabergé foresaw that its product might well be dangerous when placed near flame.

Having produced evidence as to this inherently dangerous characteristic of Tigress cologne, which was known to the company though not to the public generally, as well as the fact that the manufacturer knew it might come in contact with fire and be hazardous in that circumstance, the petitoner contends that a jury question was presented as to whether Fabergé was negligent for failing to warn against its product's latent flammability characteristic. Consequently, the petitioner asserts that when Judge Couch granted the motion for judgment n.o.v., saying, "there wasn't sufficient evidence in this case to indicate to the court, and I don't think reasonable minds should differ on this issue, that when this product was used in its intended fashion with ordinary care, that it was inherently dangerous," he improperly invaded the province of the jury.

Fabergé, on the other hand, argues that the trial judge acted properly when he granted the n.o.v. motion because, in respondent's words, "the plaintiff did not present legally sufficient proof of negligence on the part of Fabergé, Inc." In support of this position, Fabergé urges that the Court of Special Appeals was correct when, in considering this matter, it opined:

"There was a total absence of any evidence in this case which would tend to show or would support a rational inference that Fabergé foresaw or should have foreseen that its cologne would be used in the manner which caused the injuries to Nancy Moran. Since Fabergé did not foresee the use, it had no duty to warn against it." *Moran v. Williams,* 19 Md. App. 546, 561-62, 313 A. 2d 527 (1974).

Before analyzing the specific issues these conflicting contentions breed, we observe that this type of negligence action, frequently categorized as "products liability," but which just as appropriately may be referred to as "consumer

protection," Noel, *Products Liability: Bystanders, Contributory Fault and Unusual Uses*, 50 F.R.D. 321 (1970), has grown tremendously in number in recent years due at least in part to the fact that the manufacturer's responsibility has been viewed less narrowly by courts all across the country. The various opinions in this proliferation of cases have struggled to establish standards by which the manufacturer's duty can be assessed, whether it be in contract for breach of warranty or in tort for negligence. Often the cases which have been brought in tort have confounded the principles of negligence law with those of contract law. However, as a result of a number of comparatively recent cases spawned by *MacPherson v. Buick Motor Co.*, 217 N. Y. 382, 111 N. E. 1050 (1916), contract concepts have gradually been weeded out of tort actions against manufacturers, permitting such consumer suits as those for defective design, negligent production, and failure to warn (or adequately warn) of latent dangers, which are based purely on negligence concepts. It is the negligent failure to warn of concealed dangers, recognized in Maryland by our decision in *Twombley v. Fuller Brush Co.*, 221 Md. 476, 158 A. 2d 110 (1960), which is the basis for this case, and therefore we now turn our attention specifically to it.

To begin with we note that a manufacturer's duty to produce a safe product, with appropriate warnings and instructions when necessary, is no different from the responsibility each of us bears to exercise due care to avoid unreasonable risks of harm to others. 2 *Harper & James, The Law of Torts*, § 28.3 (1956); *Prosser, The Law of Torts*, § 31 (4th ed. 1971). Whether any such unreasonable risk exists in a given situation depends on balancing the probability and seriousness of harm, if care is not exercised, against the costs of taking appropriate precautions. 2 *Harper & James, supra*, §§ 16.9, 28.4; *Restatement, Second, Torts* §§ 291-93, 298 (1965). However, we observe that in cases such as this the cost of giving an adequate warning is usually so minimal, amounting only to the expense of adding some more printing to a label, that this balancing process will

almost always weigh in favor of an obligation to warn of latent dangers, if the manufacturer is otherwise required to do so.

Since the cost factor here undisputedly would be of minimal consequence, the question then needing to be answered is, when does the responsibility to warn arise? A somewhat helpful starting point in this inquisition may be *Restatement, Second, Torts* § 388 (1965) which specifies:

"Chattel Known to be Dangerous for Intended Use

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous."

This section has been cited as a general principle in the duty to warn area by previous Maryland cases, *e.g., Twombley v. Fuller Brush Co., supra; Katz v. Arundel, Etc., Corp.,* 220 Md. 200, 151 A. 2d 731 (1959). As it pertains to this case the key language of Section 388 is that which instructs that a manufacturer is liable for harm "caused by the use of the chattel in the manner for which . . . it is supplied." Strictly speaking these words would lead one to believe that the manufacturer's responsibility extends only to those intended uses for which the product was supplied. However, this is

misleading since such is not the case. As most courts and legal authors agree, the duty of the manufacturer to warn of latent dangers inherent in its product goes beyond the precise use contemplated by the producer and extends to all those which are reasonably foreseeable. *Spruill v. Boyle-Midway, Inc.*, 308 F. 2d 79, 83-84 (4th Cir. 1962); *Hall v. E. I. DuPont DeNemours & Co.*, 345 F. Supp. 353, 363 (E.D. N.Y. 1972); Comment, *Foreseeability in Product Design and Duty to Warn Cases — Distinctions and Misconceptions*, 1968 Wisc.L.Rev. 228, 231-34. Examples of what these foreseeable uses are and are not can be found in Comments j and k to Section 395 of the *Restatement*, a section about a different element of the manufacturer's responsibility, but whose explanation is just as appropriate to this context. Comment j states:

> *"Unforeseeable use or manner of use.* The liability stated in this Section is limited to persons who are endangered and the risks which are created in the course of uses of the chattel which the manufacturer should reasonably anticipate. In the absence of special reason to expect otherwise, the maker is entitled to assume that his product will be put to normal use, for which the product is intended or appropriate; and he is not subject to liability when it is safe for all such uses, and harm results only because it is mishandled in a way which he has no reason to expect, or is used in some unusual and unforeseeable manner. Thus a shoemaker is not liable to an obstinate lady who suffers harm because she insists on wearing a size too small for her, and the manufacturer of a bottle of cleaning fluid is not liable when the purchaser splashes it into his eye."

In contrast, Comment k explains:

> *"Foreseeable uses and risks.* The manufacturer may, however, reasonably anticipate other uses than the one for which the chattel is primarily intended. The maker of a chair, for example, may

reasonably expect that some one will stand on it; and the maker of an inflammable cocktail robe may expect that it will be worn in the kitchen in close proximity to a fire. Likewise the manufacturer may know, or may be under a duty to discover, that some possible users of the product are especially susceptible to harm from it, if it contains an ingredient to which any substantial percentage of the population are allergic or otherwise sensitive, and he fails to take reasonable precautions, by giving warning or otherwise, against harm to such persons."

Even though there is a vast middle ground of product uses about which reasonable minds could disagree as to whether they are or should be foreseeable to the manufacturer, thus requiring resolution by the trier of fact, from these *Restatement* elaborations it can be seen that there are extremes, abutting this wide in-between group, about which reasonable minds would not differ as to whether there is a duty to warn, making the determination of this issue one of law. In this light it would be totally unreasonable to require that a manufacturer warn against every injury which might ensue from a mishap in the use of its product, no matter how the consumer utilizes the chattel or how obvious or well known is the danger. For instance, a supplier of shoes is not liable for failing to warn that, when a woman knowingly wears shoes which are two sizes too small, they will injure her feet, *Dubbs v. Zak Bros. Co.*, 38 Ohio App. 299, 175 N. E. 626 (1931) and a producer should not be required to warn that "a knife ... will ... cut or a hammer ... will ... mash a thumb or a stove ... will ... burn a finger." *Jamieson v. Woodward & Lothrop*, 247 F. 2d 23, 26 (D.C. Cir.), *cert. denied*, 355 U. S. 855 (1957). While on the other side of the spectrum the manufacturer will be deemed, as a matter of law, to be aware of and required to warn against latent dangers which might reasonably follow from a foreseeable use of its product:

"Hair dye will be applied to hair and will touch the skin; cosmetics will be applied to faces;

underclothes will be worn next to the skin; tractors will get mired; food will be eaten; and so on." 2 *Harper & James, The Law of Torts,* § 28.6 (1956).

A review of the many cases on this subject discloses that courts have not had an easy time agreeing as to which uses by consumers require submission to the trier of fact for determination of the foreseeability issue, and those about which reasonable minds would not disagree, so that the foreseeability issue can be decided as a matter of law; not only have they applied differing ratiocinations but they have also arrived at apparently inconsistent determinations. For example, some courts have ruled that a jury may hold a manufacturer to a duty to warn because it is foreseeable that a baby might consume furniture polish, *Spruill v. Boyle-Midway, Inc.,* 308 F. 2d 79 (4th Cir. 1962); that a body rub gives off a vapor which could be ignited under a user's clothing as he attempted to light a cigarette, *Martin v. Bengue, Inc.,* 25 N. J. 359, 136 A. 2d 626 (1957); that a boy of fifteen might dive into a vinyl lined swimming pool thirty inches deep, *Colosimo v. May Department Store Company,* 325 F. Supp. 609 (W.D. Pa. 1971), *rev'd,* 466 F. 2d 1234 (3d Cir. 1972); that paint might in some way be splashed into the eye of a painter's helper, *Haberly v. Reardon Co.,* 319 S.W.2d 859 (Mo. 1958); or that use of an automobile includes involvement in collisions. *Volkswagen of America v. Young,* 272 Md. 201, 321 A. 2d 737 (1974) and *Larsen v. General Motors Corp.,* 391 F. 2d 495 (8th Cir. 1968). On the other hand, there are courts which have decided that certain uses in which dangers arose (often uses very similar to those which other courts have submitted to the jury) are as a matter of law not foreseeable by the manufacturer so that he is not liable for failing to warn the consumer of the hazard involved. Cases of this ilk have included those where the court held that the manufacturer could not, as a matter of law, foresee that a housewife would splash cleaning fluid into her eye, *Sawyer v. Pine Oil Sales Co.,* 155 F. 2d 855 (5th Cir. 1946); that the magnesium alloy legs of its product, a bathinette, when made hot by a fire in a residence would begin to blaze intensely, sending flames across a hallway

and thereby greatly increasing the danger to the property and persons present, *Hentschel v. Baby Bathinette Corp.*, 215 F. 2d 102 (2d Cir. 1954), *cert. denied*, 349 U. S. 923 (1955); that an automobile would participate in collisions, *Evans v. General Motors Corporation*, 359 F. 2d 822 (7th Cir.), *cert. denied*, 385 U. S. 836 (1966) and *General Motors Corp. v. Howard*, 244 So. 2d 726 (Miss. 1971); or that a window casement with steel crossbars might be used either as a handrest or as a ladder by iron and steel workmen, *McCready v. United Iron & Steel Co.*, 272 F. 2d 700 (10th Cir. 1959).

This Court has, to a rather limited extent, previously assayed the concept of foreseeability in the context of products liability. In *Katz v. Arundel, Etc., Corp.*, 220 Md. 200, 151 A. 2d 731 (1959) a consumer sued the supplier of ready-mix concrete for personal injuries he sustained while cementing over his dirt-floored cellar without protecting his skin from the caustic chemicals contained in the cement. The trial court was found to have properly taken the case from the jury when it ruled, as a matter of law, that the manufacturer could not have foreseen that its product, designed for professional use, would in fact be used by a "do-it-yourself" homeowner who did not know that when using cement mix the skin should be covered. Consequently, the producer was not liable for failing to warn about this danger in its product, because "[i]f the danger is not patent, it is at least in the realm of common knowledge [among the professionals to whom it is supplied] which the supplier may properly take for granted." 220 Md. at 204.[6] In *Twombley v. Fuller Brush Co.*, 221 Md. 476, 158 A. 2d 110 (1960), the consumer sued for damages arising from an illness (hepatitis) he allegedly contracted when he breathed the vapors given off by the defendant's spot remover while using it to clean his clothes. Because the product was being used in the manner for which it was intended, this Court did not have to directly define foreseeable use. However, in

6. Perhaps today a different result would be reached on the facts of this case, since ready-mix concrete is now widely sold for use by "do-it-yourself" non-professional consumers.

recognizing the duty to warn principle generally, we said that it was for the jury to decide both "[w]hether or not the defendant knew or ought to have known that its spot remover was likely to be dangerous when put to its intended use," and "whether or not the warning of danger was adequate," because the manufacturer would be liable in the event that there was "a reasonable probability of injury" if a sufficient warning were not given. In the recent case of *Volkswagen of America v. Young, supra,* the death of a Volkswagen driver resulted when his automobile was struck in the rear while the vehicle was halted at a stop sign. This impact caused the seat assembly to fail, allegedly because it had been negligently designed and manufactured. In answering a certified question propounded by the United State District Court for the District of Columbia (Maryland Code (1974) Courts and Judicial Proceedings Article, § 12-601 et seq.) as to whether, under the Maryland law, the intended use of a motor vehicle includes involvement in collisions, we observed, speaking through Judge Eldridge, that

> " 'traditional rules of negligence' lead to the conclusion that an automobile manufacturer is liable for a defect in design which the manufacturer could have reasonably foreseen would cause or enhance injuries on impact, which is not patent or obvious to the user, and which in fact leads to or enhances the injuries in an automobile collision." 272 Md. at 216.

Because in none of these three cases was this Court called upon to discuss or determine the meaning and scope of foreseeable use in the context of whether a jury question was presented concerning it, these decisions render little aid in solving the issues presented here.

We can glean from this small sampling of the many products liability cases concerning the foreseeability of various consumer uses decided by our sister courts, as well as those of this Court which are only tangentially in point, that the standard for determining whether a given consumer

use is reasonably foreseeable by the producer so as to require a warning of latent danger is, to say the least, quite vague.[7] Probably because of development on a case-by-case basis with an eye on achieving a desired result in the individual case, without following logic and applying consistent definitions, the decisions often seem to be thrashing about in a semantic and subjective morass in their attempts to apply negligence concepts in products liability litigation. The reason for this confusion is that many cases have failed to recognize that when a product liability suit sounds in tort, rather than in contract as is frequently permissible, the action is based on a negligent breach of duty owed by the manufacture to the plaintiff [8] and, consequently the settled principles of law pertaining to negligence, including the terms used in explaining that law and their definitions, are appropriately applicable. When these well-established negligence concepts are applied the dense fog which seems to have surrounded litigation concerning the manufacturer's duty to warn will largely dissipate. *Spruill v. Boyle-Midway, Inc.*, 308 F. 2d 79 (4th Cir. 1962); Wade, *On the Nature of Strict Tort Liability for Products*, 614 Insur.L.J. 141 (1974); Dillard & Hart, *Product Liability: Directions for Use and the Duty to Warn*, 41 Va.L.Rev. 145 (1955).

In determining what is contemplated by the foreseeability requirement in products liability cases, we obtain guidance from the many Maryland cases which dealt with this same concept in the general negligence context. *E.g., Segerman v.*

---

7. It should be noted that there are respected authorities who suggest that the concept of foreseeable use has never been adequately defined because it cannot be. In the words of Professor Prosser:

"In one sense, almost nothing is entirely unforeseeable, since there is a very slight mathematical chance, recognizable in advance, that even the most freakish accident which is possible will occur, particularly if it has ever happened in history before. In another, no event whatever is entirely foreseeable, since the exact details of a sequence never can be predicted with complete omniscience and accuracy." *Prosser, The Law of Torts*, § 43 (4th ed. 1971).

8. Because strict liability has not as yet been accepted in this State, we do not pursue this possibility.

*Jones,* 256 Md. 109, 259 A. 2d 794 (1969); *Sacks v. Pleasant,* 253 Md. 40, 251 A. 2d 858 (1969); *Farley v. Yerman,* 231 Md. 444, 190 A. 2d 773 (1963); *Baltimore v. Terio,* 147 Md. 330, 128 A. 353 (1925). The common thread running through these and many other Maryland cases which refer to foreseeability, was encapsulated for this Court by Judge Singley, when, in *Segerman v. Jones,* supra at 132, he said:

> "The test of foreseeability was well stated in *McLeod v. Grant County School Dist.,* 42 Wash.2d 316, 255 P. 2d 360 (1953), a case which held the school district answerable in damages to a girl who was attacked in an unlighted room adjacent to the school gymnasium. There the Court said:
>
>> '. . . Whether foreseeability is being considered from the standpoint of negligence or proximate cause, the pertinent inquiry is not whether the actual harm was of a particular kind which was expectable. Rather, *the question is whether the actual harm fell within a general field of danger which should have been anticipated.* [citing case].' 42 Wash.2d at 321, 255 P.2d at 363 " (emphasis added).

This foreseeability negligence test is consistent with the one provided by Professor Harper:

> "the courts are perfectly accurate in declaring that there can be no liability where the harm is unforeseeable, if *'foreseeability' refers to the general type of harm sustained.* It is literally true that there is no liability for damage that falls entirely outside the *general threat of harm* which made the conduct of the actor negligent. *The sequence of events, of course, need not be foreseeable. The manner in which the risk culminates in harm may be unusual, improbable and highly unexpectable, from the point of view of the actor at the time of his conduct. And yet, if the harm suffered falls within the general danger area, there may be liability, provided other requisites of*

*legal causation are present." Harper, A Treatise on the Law of Torts,* § 7 (1933) (emphasis added).

See *Pease v. Sinclair Refining Co.,* 104 F. 2d 183, 185 (2d Cir. 1939); *Hall v. E. I. DuPont DeNemours & Co.,* 345 F. Supp. 353, 362 (E.D. N.Y. 1972); Noel, *Defective Products: Abnormal Use, Contributory Negligence, and Assumption of Risk,* 25 Vand.L.Rev. 93 (1972); Comment, *Foreseeability in Product Design and Duty to Warn Cases — Distinctions and Misconceptions,* 1968 Wisc.L.Rev. 228. And, once the product is used in this "general field of danger," if the manufacturer's conduct is a significant factor in causing harm to another, the fact that the manufacturer neither foresaw nor should have foreseen the severity of the harm or the exact manner in which it occurred, does not prevent it from being liable. As Justice Cardozo reiterated in the celebrated case of *Palsgraf v. Long Island R. Co.,* 248 N. Y. 339, 162 N. E. 99 (1928): "It was not necessary that the defendant should have had notice of the particular method in which an accident would occur, if the possibility of an accident was clear to the ordinarily prudent eye." [9]

Based on this negligence law we think that in the products liability domain a duty to warn is imposed on a manufacturer if the item it produces has an inherent and hidden danger about which the producer knows, or should know, could be a substantial factor in bringing injury to an individual or his property when the manufacturer's product comes near to or in contact with the elements which are present normally in the environment where the product can reasonably be expected to be brought or used.[10] *Spruill v.*

---

9. Although speaking about foreseeability as that term relates to proximate causation, the language of Judge Oppenheimer for this Court in Little v. Woodall, 244 Md. 620, 626, 224 A. 2d 852 (1966), is equally applicable in the context of this case: "if the situation wrongfully created by the defendant increased the risk of damage, through the operation of another reasonably foreseeable force, the defendant is liable for the ensuing loss."

10. In this connection, although not dispositive of the case, in making its determination it is proper for the trier of fact to consider both the prior history of the product (such as the evidence in this case which showed a 27 year accident free history of Tigress cologne), Martin v. Bengue, Inc., 25 N. J. 359, 136 A. 2d 626 (1957); Morris, *Proof of Safety History in Negligence Cases,* 61 Harv.L.Rev. 205 (1948), and the extent of the manufacturer's

*Boyle-Midway, Inc.,* 308 F. 2d 79, 83-84 (4th Cir. 1962); Comment, *Foreseeability in Product Design and Duty to Warn Cases — Distinctions and Misconceptions, supra.* Under this analysis the unusual and bizarre details of accidents, which human experience shows are far from unlikely, are only significant as background facts to the individual case; it is not necessary that the manufacturer foresee the exact manner in which accidents occur. Thus, in the context of this case, it was not necessary for a cologne manufacturer to foresee that someone would be hurt when a friend poured its product near the flame of a lit candle; it was only necessary that it be foreseeable to the producer that its product, while in its normal environment, may be brought near a catalyst, likely to be found in that environment, which can untie the chattel's inherent danger. For example while seated at a dressing table, a woman might strike a match to light a cigarette close enough to the top of the open cologne bottle so as to cause an explosion, or that while seated in a similar manner she might turn suddenly and accidentally bump the bottle of cologne with her elbow, splashing some cologne on a burning candle placed on the vanity. So, in the words of the Supreme Court of Missouri: "If there is some probability of harm sufficiently serious that ordinary men would take precautions to avoid it, then failure so to do is negligence." *Bean v. Ross Manufacturing Co.,* 344 S.W.2d 18, 25 (Mo. 1961); see also *Pease v. Sinclair Refining Co., supra* at 186; *Haberly v. Reardon Co.,* 319 S.W.2d 859, 863 (Mo. 1958); *Tullgren v. Amoskeag Mfg. Co.,* 82 N. H. 268, 276, 133 A. 4, 8 (1926).

In applying this test here, we hold that it was unnecessary, to support a verdict in favor of the petitioner, that there be produced evidence, as demanded by the Court of Special Appeals, "which would tend to show or support a rational inference that Fabergé foresaw or should have

---

adherence to industry-wide standards and practices, The T. J. Hooper, 60 F. 2d 737 (2d Cir. 1932), cert. denied, 267 U. S. 662 (1933); Hall v. E. I. DuPont DeNemours & Co., 345 F. Supp. 353, 374 (E.D. N.Y. 1972); 1 *Frumer & Friedman, Products Liability,* § 504 (1970); *Prosser, The Law of Torts,* § 33 (4th ed. 1971).

foreseen that its [Tigress] cologne would be used in the manner [(pouring the cologne on the lower portion of a lit candle in an attempt to scent it)] which caused the injuries to Nancy Moran," *Moran v. Williams, supra* at 561-62; rather, it was only necessary that the evidence be sufficient to support the conclusion that Fabergé, knowing or deemed to know that its Tigress cologne was a potentially dangerous flammable product, could reasonably foresee that in the environment of its use, such as the home of the Grigsbys, this cologne might come close enough to a flame to cause an explosion of sufficient intensity to burn property or injure bystanders, such as Nancy.

It is our opinion then, that the totality of the evidence presented in this case, viewed most favorably toward the petitioner, was legally sufficient to enable the jury to find that Fabergé's failure to place a warning on its Tigress cologne "drip bottle" constituted actionable negligence. We say this because there was evidence presented at trial which, if accepted as true, tends to show that Fabergé's Tigress cologne possessed a latent danger of flammability; that Fabergé, through its officials, knew or should have known of this danger; that it is normal to find in the home environment both flame and cologne; that it was reasonably foreseeable to Fabergé that the flame and the cologne may well come in contact, one with the other, so as to cause an explosion which injures a person who happens to be standing nearby — Nancy; and that a reasonably prudent manufacturer, knowing of its product's characteristics and propensities, should have warned consumers of this latent flammability danger.

Of course, regardless of whether the defendant is negligent, a plaintiff's own conduct may constitute a bar to recovery if that plaintiff is determined, either as a matter of law or by the trier of fact, to also be guilty of negligence which was a direct contributing cause of the injury. But such is not the result here as the jury specifically, by its answer to issue No. 3, absolved Nancy of contributory negligence.

Whatever may be our personal persuasion if we stand in

the shoes of the jury, as to whether recovery should be permitted in this specific case, we cannot close our eyes to the fact that, although reasonable foreseeability, generally a jury question, *Segerman v. Jones, supra; Little v. Woodall*, 244 Md. 620, 224 A. 2d 852 (1966), still "does not encompass the far reaches of pessimistic imagination," *Jamieson v. Woodward & Lothrop, supra* at 247 F. 2d 29, the outer limits, within which reasonable minds may differ so that jurors are permitted to find liability in a manufacturer's negligence case based on a failure to warn, are broad in this jurisdiction as in others. Therefore, we are constrained to believe and hold that, in the instant case, especially considering the economic and social climate of our day, the issue of Fabergé's negligence was for the jury and that Judge Couch should not have granted the motion for judgment n.o.v.

> *Judgment of the Court of Special Appeals reversed and case remanded to that court with instructions that it reverse the judgment of the Circuit Court for Prince George's County and instruct that court to enter judgment in accordance with the jury's answers to the issues which were submitted to it.*
>
> *Costs in this Court and in the Court of Special Appeals to be paid by Faberge, Inc.*

*O'Donnell, J., dissenting:*

I concur that my learned brethren have correctly set forth the general principles of a manufacturer's liability for negligent failure to warn of a latent danger in his product as posited in Restatement (Second) of Torts § 388 (1965), and our holdings thereunder in *Twombley v. Fuller Brush Co.*, 221 Md. 476, 492, 158 A. 2d 110, 118 (1960); *Katz v. Arundel-Brooks Concrete Corp.*, 220 Md. 200, 203, 151 A. 2d

731, 733 (1959); and *Kaplan v. Stein,* 198 Md. 414, 420-21, 84 A. 2d 81, 84 (1951). That section in the Restatement, as well as our holdings under it, emphasizes a liability "to those whom the supplier *should expect to use the chattel . . .* for physical harm caused by the use of the chattel *in the manner for which and by a person for whose use it is supplied,* if the supplier (a) knows, or has reason to know that the chattel is or is likely to be dangerous *for the use for which it is supplied. . . ."* (Emphasis supplied.) *See Twombley v. Fuller Brush Co., supra.*

I similarly agree that it is not necessary that the manufacturer should have reasonably anticipated the exact sequence of events which might lead up to the injury to subject him to liability. *See Volkswagen of America v. Young,* 272 Md. 201, 321 A. 2d 737 (1974); *Segerman v. Jones,* 256 Md. 109, 132, 259 A. 2d 794, 805 (1969); F. Harper, Torts § 7 (1933). *See also Pease v. Sinclair Refining Co.,* 104 F. 2d 183, 185 (2d Cir. 1939); *Hall v. E. I. DuPont DeNemours & Co.,* 345 F. Supp. 353, 362 (E.D.N.Y. 1972) — all cited by the majority.

The majority similarly premises that "the duty of the manufacturer to warn of latent dangers inherent in its product goes beyond the precise use contemplated by the producer and extends to all those [uses] which are reasonably foreseeable [by the manufacturer]," citing *Spruill v. Boyle-Midway, Inc.,* 308 F. 2d 79, 83-84 (4th Cir. 1962); *Hall v. E. I. DuPont DeNemours & Co., supra;* and Comment, *Foreseeability in Product Design and Duty to Warn Cases — Distinctions and Misconceptions,* Wis.L.R. 228, 231-34 (1968). Comment k to Restatement (Second) of Torts § 395 (1965), is illustrative of the principle that the manufacturer may "reasonably anticipate other uses than the one for which the chattel is primarily intended."

Although § 395 of Restatement (Second) of Torts (1965), the comments to which were cited by the majority, pertains to the negligent manufacture of a chattel, liability thereunder is predicated on a foreseeability of an unusual risk of harm "to those who use it *for a purpose for which the manufacturer should expect it to be used* and to those whom

he should expect to be endangered by its probable use," when being lawfully used *"in a manner and for a purpose for which it is supplied."*

Comment j thereunder, as set forth by the majority, points out that the liability is limited to persons endangered by risks "in the course of uses of the chattel which the manufacturer should *reasonably* anticipate." It emphasizes that "[i]n the absence of special reason to expect otherwise, the maker is entitled to assume that his product will be put to a *normal* use, for which the product is intended or *appropriate;* and he is *not* subject to liability when it is safe for *all such uses,* and the harm results only because it is *mishandled in a way which he has no reason to expect,* or is used in some unusual or unforeseeable manner."

The cases cited by the majority indeed have applied this concept of the doctrine of "foreseeability."

In *Spruill v. Boyle-Midway, Inc., supra,* the mother of a 14-month old child was using furniture polish in a room where the infant was in a crib; leaving the room for a few moments the mother placed the bottle of furniture polish upon a scarf on an adjacent bureau. While absent from the room the child, in tugging upon the scarf, obtained possession of the furniture polish, ingested it and died. The evidence established that the manufacturer had actual knowledge of 32 prior cases of young children, who, acquiring possession of the polish, had ingested it and ten had died therefrom. There was present in the case evidence not only of the foreseeability of physical harm from the ingestion of the product, but there was evidence from which it was foreseeable that in a home environment such use as was made by the child could have been reasonably anticipated.

In *Hall v. E. I. DuPont DeNemours & Co., supra,* 18 children, in 18 separate incidents, had been injured by the use made by them of blasting caps. The manufacturer maintained statistics on the frequency with which children had been injured by the use of the blasting caps. There was thus found present not only a foreseeability of a general risk of harm that injury might result in any number of ways

from the use of blasting caps, but it was foreseeable — from the data collected by the manufacturer — that the blasting caps would probably be misused by children.

*Pease v. Sinclair Refining Co., supra,* involved a case where a science teacher obtained bottles of petroleum products from the manufacturer for a student exhibit; one bottle marked "kerosene" actually contained water. In conducting a laboratory experiment the teacher, believing the liquid to be in fact kerosene, mixed it with sodium metal with a resultant explosion (there would have been no explosion had the contents been "kerosene"). The court rejected the contention of the appellee that it was impossible to have contemplated that the exhibit would have been used in this exact manner for a laboratory experiment; it did recognize, however, that the bottle might be put to uses other than a mere science class display. In affirming the decision of the trial court to submit the issue of foreseeability to the jury, the court held that there was evidence of a foreseeability of the general risk of injury and it was equally reasonably foreseeable that a science teacher might use such a petroleum product for a laboratory experiment although it had been supplied for a science exhibit.

In *Bean v. Ross Manufacturing Co.,* 344 S.W.2d 18 (Mo. 1961), a plumber undertaking to unclog a drain poured liquid drain cleaner into the opening and inserted a plug — which was the usual practice — to prevent the emission of noxious odors. After several minutes the liquid drain cleaner reacted chemically, exploded in his face and blinded him. In holding that the question of foreseeability, under those facts, was for the jury, the court found that there was no misuse of the product by the plumber, but there was, on the part of the manufacturer, a reasonable foreseeability of the product's being used in this fashion.

*Tampa Drug Co. v. Wait,* 103 So. 2d 603 (Fla. 1958), involved the use by a plaintiff's decedent of carbon tetrachloride in cleaning the floors of his home. He had poured the chemical into a pan and upon his knees, after dipping a rag into the pan, cleaned his floor; from the

inhalation of the fumes he became ill and died. The Florida court ruled that liability arises when a duty exists to take reasonable precautions to avoid reasonably foreseeable injuries to those who might reasonably be foreseen as using the product; that reasonable care must be taken to give adequate notice of the possible consequences of use, as well as reasonably foreseeable misuse. Although the court held that the burden was upon the plaintiff to show a failure to warn of a latent danger which the distributor knew or should have known, or in the reasonable course of business should have been able to foresee from possible uses of the product, found that there was evidence that the drug company was aware of the general risk of harm from the inhalation of carbon tetrachloride vapors and the use of the product in cleaning floors at home was to be reasonably anticipated.

In *Martin v. Bengue, Inc.*, 25 N. J. 359, 136 A. 2d 626 (1957), the plaintiff had been using the liniment "Ben-Gay" twice a day, for several days, and continued to wear the same pajamas during that interval. While sitting in a chair as he struck a match the matchhead fell off igniting his pajamas, which had now become saturated with the liniment. The New Jersey court held that the failure to warn of the general risk of harm and danger from fire constituted negligence where it was reasonably foreseeable that the liniment might be applied heavily to the body over an extended period of time and saturate apparel even though there was no foreseeability on the part of the manufacturer of the exact sequence of events that did occur — that an ill man, sitting in his living room chair, might have the head of a match sever and ignite his saturated pajamas.

Similarly, in *Brown v. Chapman*, 304 F. 2d 149 (9th Cir. 1962), it was held that it was foreseeable that the hula skirt worn by the plaintiff to a party was unusually susceptible to fire and it was equally reasonably foreseeable that in that condition it might be ignited by someone's lighted cigarette at a party attended by several hundred people.

Perhaps *Haberly v. Reardon Co.*, 319 S.W.2d 859 (Mo. 1958), best exemplifies the application of the rule. There a

12-year old boy lost the sight of one eye while assisting his father who applied a cement paint to a row of bricks along a driveway. Both the father and son were working on their knees, the boy a few feet ahead cleaning leaves and grass from the bricks. The father directed his son to remove some leaves from bricks he had just painted. As the son undertook to comply he stood, moved a space, and as he began to kneel again his eye accidentally came in contact with the paint brush held in the father's hand. The child was instantly blinded. In rejecting the contention of the manufacturer that there was no duty to warn because the cement paint was being applied by the father in a way it could not reasonably anticipate and that the injury to the child did not arise out of a hazard which it could reasonably have foreseen, the court held that it was reasonably foreseeable that cement paint would be used to paint bricks and that the general risk of harm of accidentally getting it in the eye of a helper was equally reasonably foreseeable; that there was both a foreseeability of the use to which the product was being put and a foreseeability of the harm resulting from that use. *Compare Katz v. Arundel, Etc. Corp.*, *supra*. *See also* majority opinion n. 6.

Our recent holdings in *Volkswagen of America v. Young*, *supra*, are in accord with the application of this scope of "foreseeability." In that case, decided under the Uniform Certification of Questions of Law Act, the pleadings alleged that the defendants had "actual notice and knowledge" of the defective seat assembly in their vehicles and we held, on the question certified, that the vehicle of the decedent, when struck in the rear by another vehicle while stopped at a traffic signal, was within the "intended use" and "intended purpose" of an automobile at the time of the impact; that there was a reasonable foreseeability of the actual harm of injury resultant from the defective seat assembly and a reasonable foreseeability of such resultant harm when the vehicle was being used for a purpose or in a manner which should have been reasonably anticipated.

It is with the lack of syllogistic application of these principles to the facts in this case that I emphasize my

dissent. The majority, from a recognition of these principles, breaches the chasm by concluding that "it was only necessary that the evidence be sufficient to support the conclusion that Fabergé, knowing or deemed to know that its Tigress cologne was a potentially dangerous flammable product, could reasonably foresee that *in the environment of its use*, such as the home of the Grigsbys, this cologne might come close enough to a flame to cause an explosion of sufficient intensity to burn property or injure bystanders, such as Nancy [Moran]." This result was reached after the majority found that it was "not necessary for a cologne manufacturer to foresee that someone would be hurt when a friend poured its product near the flame of a lit candle; it was only necessary that it be foreseeable to the producer that its product, while *in its normal environment*, may be brought near a catalyst, likely to be found in that environment, which can untie the chattel's inherent danger." (Emphasis supplied.)

It must be emphasized that upon the record there was no evidence whatsoever of such a use as was here made of the cologne ever having previously occurred; in fact, the use of Tigress cologne had a 27 year accident-free history. The evidence does not establish a general flammability of the cologne vapors, but only when such vapors are positioned within one-quarter inch from an open flame. Cologne is not a new or mysterious product and does not have a multitude of uses or functions. Eau de cologne, sometimes called "toilet water," is defined as a "perfumed, largely alcoholic, liquid for use in or after a bath or as a skin freshener"; it has a limited utility; there is no suggestion historically or otherwise of its use as a product other than as a toilet water or skin freshener. There was no evidence presented in the trial court that the Tigress cologne could ever be dangerous when being put to the uses for which it was supplied.

When a use is made of a product so remote from that intended as to be unforeseeable, the manufacturer is relieved of liability from such use. *See Smith v. Hobart Mfg. Co.*, 185 F. Supp. 751 (E.D. Pa. 1960), citing 2 F. Harper & F. James, Torts § 28.6 (1956) and W. Prosser, Torts, at 503 (2d ed. 1955).

Assuming, *arguendo,* that Fabergé may have a duty to warn of a general risk because of a latent danger of flammability of its cologne — where its vapors might be brought within one-quarter of an inch of an open flame — it does not follow that this duty to warn is owed to everyone, howsoever the product might be used or abused. It may well be true that the manufacturer owes a duty to warn of the general risk of fire to a young lady who, while applying the cologne, accidentally should knock over the container and spill it upon a burning candle, but such are not the facts here. *See Whitehurst v. Revlon, Inc.,* 307 F. Supp. 918 (E.D. Va. 1969), where the plaintiff was burned while applying fingernail polish and raised a lighted cigarette and where it was concluded that there was a foreseeability that nail polish presented a general hazard when brought near a flame or severe heat and it was equally foreseeable that a user in applying fingernail polish might do it in proximity to such flame or heat from a cigarette. Concededly, such a duty to warn might be owed to one scenting a billet-doux, or intimate wearing apparel, or to one dabbing a droplet at pulse points of the body.

Although admittedly a jury may have found that the existence of a latent general danger of harm from the flammablilty of cologne vapors was reasonably foreseeable, the majority, in the application of the principles which they endorse, have concluded that since the evidence established that the injury fell within a "general field of danger" that the duty to warn was applicable because, in its normal environment, the cologne might be brought near an open flame, likely to be found in that environment, and regardless of the manner in which the product happened to be used or misused.

In *Hall v. E. I. DuPont DeNemours & Co., supra,* the Court analogized the liability of a manufacturer for his product with a landowner's liability to a trespasser, in emphasizing the two-pronged facets of foreseeability. Under the holdings in some states a possessor of real property has been held to be under a general duty to warn of an unsafe condition upon his premises which causes injury to a

trespasser whose trespassory presence is reasonably foreseeable.[1] Those cases conclude that there is a duty to warn of a general risk of harm inherent in the unsafe condition and that it is immaterial that the possessor of the premises did not foresee the exact sequence of events which led up to the injury to the trespasser, *i.e.* he need not anticipate that the trespasser would be running or merely walking when he came upon the hazardous condition. In such cases, however, it does not follow that the duty to warn of the general risk of harm is owed to everyone; it is held that such duty extends only to those trespassers who should have been reasonably anticipated to become endangered by the unsafe condition.

All the cases cited by the majority in support of their conclusion contain the element — conspicuously absent in this case — that there was a reasonable foreseeability on the part of the manufacturer that the use which was being made of the product at the time of the injury was itself reasonably foreseeable by the manufacturer.

As the counsel for Fabergé observed succinctly:

> "There may be some iconoclast who would like their [sic] candles to smell like rum, but if someone were to pour 150 proof rum [75% alcohol] on a lighted candle to give it a rum scent and the vapors of that rum were to catch fire and injure someone, the manufacturer of the rum would not be liable because this is idiosyncratic and unforeseeable use of the product."

A fortiori, if someone undertakes to use a skin freshener or body cologne to perfume a lighted candle and its vapors, in juxtaposition to the open flame, should ignite, its manufacturer should not be liable because of this palpably unanticipated and unforeseeable misuse of its product.

The trial court, in granting the motion for judgment n.o.v. stated: "I just don't believe that it is reasonable to charge

---

1. The Maryland Rule is substantially different. *See* Wurz v. Abe Pollin, Inc., 384 F. 2d 549 (4th Cir. 1967); Bramble v. Thompson, 264 Md. 518, 287 A. 2d 265 (1972); Osterman v. Peters, 260 Md. 313, 272 A. 2d 21 (1971).

Fabergé with reasonably foreseeing that its product will be used other than as a body cologne."

I concur with its conclusion and that reached by the Court of Special Appeals [*Moran v. Williams*, 19 Md. App. 546, 313 A. 2d 527 (1974)] where Judge Powers, for that court, concluded:

"There was a total absence of any evidence in this case which would tend to show or would support a rational inference that Fabergé *foresaw or should have foreseen* that its cologne *would be used in the manner* which caused the injuries to Nancy Moran. Since Fabergé did not foresee the use, it had no duty to warn against it." (Emphasis supplied.) 19 Md. App. at 561-62, 313 A. 2d at 536.

It seems to me that the majority has fallen into the pitfall, recognized by Professor Prosser, who, in undertaking to analyze the treatment by the various courts of the illusory concept of "foreseeability" and noting the confusion resulting therefrom, states:

"Some 'margin of leeway' has to be left for the unusual and the unexpected. But this has opened a very wide door; and the courts have taken so much advantage of the leeway that it can scarcely be doubted that a great deal of what the ordinary man would regard as freakish, bizarre, and unpredictable has crept within the bounds of liability by the simple device of permitting the jury to foresee at least its very broad, and vague, general outlines." W. Prosser, Torts, § 43, at 269 (4th ed. 1971).

It seems to me that the majority, in holding that there was, sufficient evidence for the jury to find negligence because Fabergé could reasonably have foreseen that their cologne, "in the environment of its use," might be brought close enough to an open flame to bring about a resultant harm or injury, modifies the rule enunciated in the Restatement (Second) of Torts § 388 (1965) — which this

Court has consistently applied and adopted — as well as § 395, particularly comment j thereunder, and thus has permitted a liability for the resultant harm from a product — itself of very limited uses — notwithstanding the fact that "in the environment of its use" the evidence showed that the product had been "mishandled in a way which [the manufacturer] has no reason to expect."

It is my firm conclusion that the defendant's motion for judgment n.o.v. was properly entered in the trial court since I believe that reasonable minds would not differ in answering in the negative the issue of whether Fabergé should have reasonably foreseen that its cologne would have been poured within one-quarter inch of an open flame for the purpose of undertaking to scent a burning candle. *See Segerman v. Jones, supra.*