*Ruth Belche May, Individually and as Executrix of the Estate of Philip Royce May v. Air & Liquid Systems Corp., etc., et al.*, No. 5, September Term, 2015, Opinion by Adkins, J.

**PRODUCTS LIABILITY — FAILURE TO WARN — STRICT LIABILITY — NEGLIGENCE:** Under narrow circumstances, manufacturers have a duty to warn of asbestos-containing parts they have not placed into the stream of commerce, which can support a products liability action in negligence or strict liability.

IN THE COURT OF APPEALS

OF MARYLAND

No. 5

September Term, 2015

RUTH BELCHE MAY, Individually and as
Executrix of the Estate of Philip Royce May

v.

AIR & LIQUID SYSTEMS CORP., etc., et al.

Barbera, C.J.
Battaglia
Greene
Adkins
McDonald
Watts
Harrell, Glenn T., Jr. (Retired,
Specially Assigned),

JJ.

Opinion by Adkins, J.
Battaglia and Watts, JJ., dissent.

Filed: December 18, 2015

In this products liability case, the content of a sixty-some year old instruction manual for a heavy piece of naval equipment may be the quintessential smoking gun. We consider failure to warn claims in strict liability and negligence brought by the widow of a naval machinist against manufacturers of heavy-duty pumps. We are asked to determine the interesting question of whether a manufacturer can be liable for failing to warn about the risk of harm from exposure to asbestos-containing replacement parts that it neither manufactured nor placed into the stream of commerce, but which were integral to the operation of its product.

As this case reaches us after a summary judgment in favor of the defendants, "we consider whether the plaintiffs offered sufficient admissible evidence in their opposition to summary judgment to allow a jury to consider their claims of negligence and strict liability against the corporate defendants." *Beatty v. Trailmaster Prods., Inc.*, 330 Md. 726, 739, 625 A.2d 1005, 1012 (1993). We state the facts as alleged by the plaintiffs.

## FACTS AND LEGAL PROCEEDINGS

Ruth Belche May ("Petitioner") is the widow of a machinist mate, Philip Royce May ("May"), who served on active duty in the United States Navy ("Navy") for 20 years, from 1956 until 1976. Air & Liquid Systems Corp., Warren Pumps LLC, and IMO Industries, Inc. ("Respondents") manufactured steam pumps that were sold to the Navy. The Navy used these pumps to move extremely hot and highly pressurized steam through the ship's steam propulsion system. In accordance with the Navy's specifications, the Respondents' pumps contained asbestos gaskets and packing when the Respondents first

delivered the pumps to the Navy.[1]  Asbestos was used in gaskets and packing as an insulating material because it could withstand the extremely high temperatures and pressures produced by the steam propulsion system.

As a machinist mate, May worked in the engine room of Navy ships.  May testified that he would go to the log room and consult the instruction manuals on any piece of equipment he serviced.[2]  It is undisputed that Respondents' manuals did not contain any warnings regarding the danger of inhaling asbestos dust or directions to wear protective gear.[3]  May's duties aboard Navy ships included replacing asbestos gaskets and packing in

---

[1] Gaskets are mechanical seals that prevent the leakage of gas or fluids from valves. Packing is insulation inserted between a valve stem and valve cover to maintain a seal.  It is not clear from the record whether the Respondents themselves manufactured the original asbestos gaskets and packing or whether they bought them from third parties and incorporated these parts into their final product.  Regardless, Respondents placed asbestos gaskets and packing into the stream of commerce when they first sold steam pumps to the Navy.

[2] Respondents dispute what inference should be drawn from May's testimony that he reviewed the instruction manuals, and contend that it cannot be inferred that May relied on the manuals for the purpose of determining whether replacement gaskets and packing for any pump should contain asbestos.  As this appeal is from a grant of summary judgment, May, the non-moving party, is entitled to the benefit of all reasonable inferences to be drawn from the evidence. *Educ. Testing Serv. v. Hildebrant*, 399 Md. 128, 140, 923 A.2d 34, 41 (2007).  Under our summary judgment standard, his testimony that he checked the manual before working on the machine is sufficient to survive Respondents' motion. Respondents also contend that May's testimony about routinely checking the manuals was more an ideal than a reality because he also testified that if there were "two pumps of the same brand or look alike or work alike, you may only have one book.  Over time they disappear."  Again, in this appeal, we must view all the facts in the light most favorable to the non-moving party and also draw all reasonable inferences in that party's favor.  Under this standard, Respondents' factual disputes are unavailing.

[3] Air & Liquid Systems Corp., Warren Pumps LLC, and IMO Industries, Inc. filed one brief for purposes of this appeal.  We therefore look to testimony in the record as evidence admissible against all Respondents solely for purposes of this appeal.

2

the pumps of the ships' steam propulsion systems. This work exposed him to airborne asbestos fibers. When removing gaskets, May used tools that generated respirable dust. When installing a new gasket, May would have to shape it into the proper size, which also generated respirable dust. He testified that he had removed "[m]any gaskets, numerous gaskets, hundreds and hundreds and hundreds of gaskets."

May, however, was never exposed to the asbestos gaskets and packing that *these* Respondents used in their products. He was exposed only after other Navy mechanics, who performed maintenance on Respondents' pumps, replaced Respondents' gaskets and packing with new components acquired from third parties—also containing asbestos.

In January 2012, May learned he was suffering from mesothelioma, a form of cancer that is commonly caused by asbestos exposure.[4] May and Petitioner filed suit in the Circuit Court for Baltimore City ("the Circuit Court") in March 2012, naming numerous defendants, including the Respondents.[5] After completion of discovery, the Respondents moved for summary judgment on the ground that, as a matter of law, they had no duty to warn of the dangers of the asbestos-containing replacement parts that they neither manufactured nor placed into the stream of commerce. The Circuit Court granted the

---

[4] Included in the record is expert deposition testimony, filed by Petitioner in opposition to summary judgment, saying that "all of [May's] exposures to asbestos above background levels [were] causes of Mr. May's mesothelioma." The expert explained that "this is a dose dependent disease and it relates to cumulative exposures, and these are medical causes of his mesothelioma."

[5] Other defendants included the manufacturers of the asbestos-containing replacement parts that May replaced and installed.

motions and the Court of Special Appeals affirmed. *May v. Air & Liquid Sys. Corp.*, 219 Md. App. 424, 426–27, 100 A.3d 1284, 1285 (2014).

Petitioner appealed and we granted her Petition for Writ of Certiorari.[6] Petitioner presented three questions for review, which we simplify into the following questions:

(1) Can Respondents be liable in negligence for injuries sustained by May?

(2) Can Respondents be strictly liable for injuries sustained by May?

Because we answer yes as to both questions, we shall reverse the judgment of the Court of Special Appeals and remand for further proceedings.

## STANDARD OF REVIEW

A circuit court may grant a motion for summary judgment if there is no dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Maryland Rule 2-501(f). "The court is to consider the record in the light most favorable to the non-moving party and consider any reasonable inferences that may be drawn from the undisputed facts against the moving party." *Mathews v. Cassidy Turley Md., Inc.*, 435 Md. 584, 598, 80 A.3d 269, 276 (2013). Because a circuit court's grant of summary judgment hinges on a question of law, not a dispute of fact, an appellate court is to review whether the circuit court was legally correct without according deference to that court's legal conclusions. *Id.*

---

[6] May died in April 2014.

**DISCUSSION**

In *Twombley v. Fuller Brush Co.*, 221 Md. 476, 491–94, 158 A.2d 110, 118–19 (1960), we first recognized that a duty to warn can form the basis of a products liability action, and further developed the framework for this claim in *Moran v. Fabergé, Inc.*, 273 Md. 538, 332 A.2d 11 (1975). In *Moran*, we articulated the balancing of interests that is involved, and emphasized the role of warnings as a low cost precaution:

> To begin with we note that a manufacturer's duty to produce a safe product, with appropriate warnings and instructions when necessary, is no different from the responsibility each of us bears to exercise due care to avoid unreasonable risks of harm to others. 2 Fowler Harper & Fleming James, *The Law of Torts*, § 28.3 (1956); William Prosser, *The Law of Torts*, § 31 (4th ed. 1971). Whether any such unreasonable risk exists in a given situation **depends on balancing the probability and seriousness of harm, if care is not exercised, against the costs of taking appropriate precautions**. 2 Harper & James, *supra*, §§ 16.9, 28.4; Restatement (Second), Torts §§ 291–93, 298 (1965). However, we observe that in cases such as this the cost of giving an adequate warning is usually so minimal, amounting only to the expense of adding some more printing to a label, that this balancing process will almost always weigh in favor of an obligation to warn of latent dangers, if the manufacturer is otherwise required to do so.

*Id.* at 543–44, 332 A.2d at 15 (emphasis added).

Failure to warn claims may be brought under a negligence or strict liability theory. Robert D. Klein, *A Comparison of the* Restatement (Third) of Torts: Products Liability *and the Maryland Law of Products Liability*, 30 U. Balt. L. Rev. 273, 288 (2001) ("In Maryland, failure-to-warn cases have either proceeded as negligence causes of action or . . . as strict liability claims . . . ."); *see Gourdine v. Crews*, 405 Md. 722, 743, 955 A.2d

769, 782 (2008) ("Duty, thus, is an essential element of both negligence and strict liability causes of action for failure to warn.").

If the asbestos dust that May inhaled was from the original gaskets and packing in the pumps sold by Respondents, this would be a straightforward negligent and strict liability failure to warn case. The novelty of this case is that Petitioner asserts liability against Respondents even though May was never exposed to asbestos dust from the original gaskets and packing. The original asbestos gaskets and packing that Respondents incorporated into the pumps they sold to the Navy had already been replaced by *other* gaskets and packing supplied by third parties long before May even began working for the Navy in 1956. This issue has been addressed in only a handful of cases, which we will discuss, *infra*.

Relying on *Ford Motor Co. v. Wood*, 119 Md. App. 1, 36 n.7, 703 A.2d 1315, 1331 n.7 (1998), Respondents contend that a manufacturer has a duty to warn only of products that it has placed into the stream of commerce "regardless of whether [its] duty to warn sounds in negligence or strict liability." But their argument depends quite heavily on the assumption that a component part (asbestos gaskets and packing) should be separated from the product sold (the pump). In other words, Respondents see the product sold as the asbestos gaskets and packing, not the pump into which they were incorporated. We will test that assumption as we move through our analysis. We analyze the negligent and strict

liability failure to warn issues in turn, even though the analytical basis for each overlaps with the other.[7]

## I.     Negligent Failure to Warn

### Duty to Warn and *Patton* Factors

A prima facie products liability failure to warn claim grounded in negligence requires a showing of duty of care.  *See Moran*, 273 Md. at 543–44, 332 A.2d at 15 (describing Section 388 of the Restatement (Second) of Torts (1965) "as a general principle in the duty to warn area"); *see also Nissen Corp. v. Miller*, 323 Md. 613, 619, 594 A.2d 564, 566–67 (1991) (explaining that "[t]he negligence count of a products liability claim comports with longstanding common law tort principles").  In determining the existence of a duty of care, we consider the following non-exclusive factors:

> the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered the injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved.

*Patton v. U.S. Rugby Football*, 381 Md. 627, 637, 851 A.2d 566, 571 (2004) (citing *Ashburn v. Anne Arundel Cnty.*, 306 Md. 617, 627, 510 A.2d 1078, 1083 (1986)).

---

[7] *Kennedy v. Mobay Corp.*, 84 Md. App. 397, 410, 579 A.2d 1191, 1198 (1990) ("'The distinction between negligence and strict liability lessens considerably in failure to warn cases.'") (quoting *Werner v. Upjohn Co., Inc.*, 628 F.2d 848, 858 (4th Cir. 1980)). *See infra* Part II for discussion of *Owens-Illinois, Inc. v. Zenobia*, 325 Md. 420, 601 A.2d 633 (1992) and *Gourdine v. Crews*, 405 Md. 722, 955 A.2d 769 (2008).

Here, the crux of Respondents' argument is that they "did not owe [] May a duty of care for the fundamental reason that they did not manufacture or sell the injurious asbestos parts." Respondents take umbrage at the notion that they can be liable for injuries from a replacement part that they never touched.

Petitioner argues that the foreseeability of harm to a navy machinist who must replace the asbestos-containing components inside the pump "weighs heavily in favor of imposing a duty" to warn on Respondents. Our well-settled law reflects that the foreseeability of harm factor weighs heavily in favor of imposing a duty. *See Remsburg v. Montgomery*, 376 Md. 568, 583, 831 A.2d 18, 26 (2003) (foreseeability is "among the most important" factors considered in imposing a duty). Moreover, where a manufacturer's product contains asbestos components and those components must be replaced periodically with new asbestos components, the risk of harm to a machinist removing the old and installing the new is highly foreseeable. Notably, one federal court was "not convinced" that a manufacturer should avoid liability under a failure to warn claim "where it designed its products to be used with asbestos-containing materials and actually incorporated asbestos-containing materials into the products it sold." *Quirin v. Lorillard Tobacco Co.*, 17 F. Supp. 3d 760, 771 (N.D. Ill. 2014).[8] The court reasoned that "a jury could conclude that it was not just foreseeable, but inevitable, that the product would subject those working with it to the possible hazards of asbestos exposure" in this situation. *Id.*

---

[8] The court applied maritime law to the negligence claims of a machinist mate who was diagnosed with mesothelioma following exposure to asbestos on a Navy vessel. *Quirin v. Lorillard Tobacco Co.*, 17 F. Supp. 3d 760, 767 (N.D. Ill. 2014).

8

But foreseeability alone is not sufficient to establish a duty. *Remsburg*, 376 Md. at 583, 831 A.2d at 26 ("While foreseeability is often considered among the most important of these factors, its existence alone does not suffice to establish a duty under Maryland law."). Other factors must be considered. Bearing in mind the prominence of foreseeability of injury, we turn to those factors.

(i) The "***degree of certainty that the plaintiff suffered the injury***" also weighs in favor of imposing a duty here. *Patton*, 381 Md. at 637, 851 A.2d at 571. Respondents do not contest that May suffered from and died as a result of mesothelioma caused by exposure to replacement parts containing asbestos in the pumps that they sold to the Navy.

(ii) The "***closeness of the connection between the defendant's conduct and the injury suffered***" may prove to be the turning point for determining duty. *Id.* To be sure, the asbestos components Respondents placed in the pumps had been replaced by other equivalent parts supplied by third parties, and in that sense the Respondents' conduct is somewhat removed from the injury. In our discussion of strict liability, we will address whether the replacement of these components constituted a "substantial change." Here, though, we frame our analysis in the language of negligence, and focus on the *sale* of the pump and the *conduct* of Respondents in deciding whether to warn the person(s) who will use and repair the pump.[9]

---

[9] Indeed, the danger posed by removing asbestos-containing gaskets and packing put into the stream of commerce by a manufacturer is exactly the same as the danger posed by removing gaskets and packing that a manufacturer has not touched.

A federal district court decision, relying on New York state cases, proves to be instructive.[10]  In *Surre v. Foster Wheeler LLC*, 831 F. Supp. 2d 797, 801–02 (S.D.N.Y. 2011), the court found that the defendant manufacturer had no duty to warn where there was no evidence that the boilers it sold required asbestos insulation to function.[11]  The court, however, carefully distinguished circumstances where the connection between the defendant's conduct and the injury was *strengthened* because asbestos was crucial to operation of the defendant's product:

> Where additional circumstances **strengthen the connection** between the manufacturer's product and the third party's defective one, a duty to warn may arise.  For example, the First Department has held that **a manufacturer has a duty to warn against the dangers of a third-party product if the third-party product is necessary for the manufacturer's product to function**.  *See Rogers v. Sears, Roebuck and Co.*, 268 A.D.2d 245, 701 N.Y.S.2d 359, 359–60 (1st Dep't 2000) (manufacturer of barbeque grill could have duty to warn

---

[10] Although the New York Court of Appeals has not directly addressed the issue, it will consider whether manufacturers can be liable for failure to warn about hazards in products that they have not placed into the stream of commerce in a case stemming from an appeal as of right.  *See In re New York City Asbestos Litig.* (*Dummitt v. A.W. Chesterton*), 990 N.Y.S.2d 174 (N.Y. App. Div. 2014), *appeal docketed*, No. APL-2014-00209 (N.Y. Aug. 1, 2014).

[11] As the court explained:

> [T]here is no evidence that Pacific boilers required asbestos insulation to function.  Indeed, an employee manual from 1925 indicated that asbestos was only one of several materials that could be used to insulate Crane products.  (*See* Doc. 20, Ex. 21 at 7) (identifying "asbestos . . ., magnesia, felt, cork, wood fibre and hair" as possible insulators).

*Surre v. Foster Wheeler LLC*, 831 F. Supp. 2d 797, 801 (S.D.N.Y. 2011).

against dangers of third-party-manufactured propane tank where grill could not be used without tank).

*Id.* at 801 (emphasis added).

Indeed, the court specifically considered the liability of a pump manufacturer who knew that asbestos would be incorporated in its pump:

> Furthermore, a duty to warn may arise if the manufacturer knows that its product will be outfitted with a third party's defective product pursuant to contract specifications. *Berkowitz v. A.C. & S., Inc.*, 288 A.D.2d 148, 733 N.Y.S.2d 410, 411–12 (1st Dep't 2001) (pump manufacturer might have duty to warn of dangers of asbestos exposure where "government provided certain specifications involving insulation" and manufacturer knew insulation would contain asbestos)[.]

*Id.*[12]

---

[12] Respondents give short shrift to the *Berkowitz* decision cited by the court in *Surre*, highlighting *Surre*'s characterization of *Berkowitz* as "a one-paragraph opinion with no clear holding." *See Surre*, 831 F. Supp. 2d at 802. In making this statement, however, the court in *Surre* was simply rejecting the plaintiff's reading of *Berkowitz* as standing for the proposition that a manufacturer has a duty to warn whenever it is foreseeable that asbestos would be used with its products:

> *Berkowitz* involved more than a mere possibility that asbestos might be used, and the case hardly stands for the broad proposition that a manufacturer has a duty to warn whenever it is foreseeable that its product will be used in conjunction with a defective one. Rather, the specifications [in *Berkowitz*] apparently *prescribed* the use of asbestos.

*Id.* at 802–03 (emphasis in original) (citing *Berkowitz v. A.C. & S., Inc.*, 733 N.Y.S.2d 410, 412 (N.Y. App. Div. 2001)).

11

Similar reasoning guided a federal district court in Illinois that, applying maritime law, carved out an exception to what it called the "bare metal defense"[13]:

> In general, consistent with the bare metal defense, a manufacturer is not liable for materials it did not supply. But a duty may attach where the defendant manufactured a product that, by necessity, contained asbestos components, **where the asbestos-containing material was essential to the proper functioning** of the defendant's product, and where the asbestos-containing material would necessarily be replaced by other asbestos-containing material, whether supplied by the original manufacturer or someone else.

*Quirin*, 17 F. Supp. 3d at 769–70 (emphasis added). That court denied the manufacturer's motion for summary judgment. *Id.* at 772.

The present case, on appeal from a summary judgment, falls within the exception, carved out by the New York and Illinois cases, to the "bare metal defense." Significantly, the record contains evidence supporting a reasonable inference that asbestos was the only available insulating material that could be used in the gaskets and packing in high-temperature operations. May testified that the pump manufacturers "had no other type of gasket at that time that would work, except the asbestos sheet gasket." He stated that the pumps in question, which would pump matter reaching temperatures of 185 degrees or higher, needed asbestos gaskets—as opposed to other types of gaskets such as rubber, cork, paper, and vegetable fiber—because the "temperature of the heat is so much[,] it would burn [these other materials] up."

---

[13] The court explained the "bare metal defense" as a position that "manufacturers . . . are not liable for the dangers of asbestos-containing replacement parts supplied by a third party." *Quirin*, 17 F. Supp. 3d at 768.

12

In response to interrogatories, Air & Liquid Systems wrote that "[i]n the 1980s, gaskets and packing materials containing asbestos became generally unavailable while, at the same time, suitable replacement products . . . were becoming available." This indicates that suitable non-asbestos components did not exist when Respondents sold their pumps to the Navy in the 1940s and 1950s. Moreover, Henry Hartz, an IMO Industries engineer, testified that "there was a scramble in the industry to find something that would replace asbestos." Thus, even if nothing "inherent in the pump design itself 'required asbestos'" as Respondents contend, the asbestos gaskets and packing still needed to be replaced by other asbestos gaskets and packing because no other suitable material could be used with pumps that transported high-heat material.

This evidence, taken together, is sufficient to permit a reasonable inference that asbestos was crucial to operation of the pumps at such high temperatures. We agree with the decisions described above that when the noxious component of the product is essential to its intended operation, the connection factor is strengthened, and strongly favors finding a duty to warn.

(iii) The "***extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care***" is negligible in this case. *Patton*, 381 Md. at 637, 851 A.2d at 571. We have long recognized that the cost imposed on a manufacturer to give an adequate warning "is usually so minimal, amounting only to the expense of adding some more printing to a label." *Moran*, 273 Md. at 543, 332 A.2d at 15. Here, Respondents supplied instruction manuals with their pumps and could easily have included in those manuals a warning that asbestos dust was dangerous, and a directive to

13

wear protective gear when working around the pumps. Imposing a duty to warn on manufacturers of pumps containing asbestos gaskets and packing that require periodic replacement with other asbestos gaskets and packing would be a small burden relative to the high risk of injury and death caused by exposure to asbestos. We see no adverse consequences to the community in imposing this duty. Requiring a warning in an instruction manual for a large piece of naval equipment will neither cause a proliferation of warnings, nor be so costly as to burden the Respondents. In all, the light burden on manufacturers favors imposition of a duty.

(iv) *Moral blame*. *See Patton*, 381 Md. at 637, 851 A.2d at 571. Petitioner assigns moral blame to Respondents for failing to warn users of their pumps about the known danger they would face. Respondents disclaim any moral blame on grounds that they supplied critical equipment to the Navy as part of a war effort.[14] If Respondents knew or

---

[14] Respondents cast blame on the Navy and rely in part on the expert report of Rear Admiral David P. Sargent, Jr. for the proposition that May's injury is not properly attributable to them. In his expert report, Sargent describes how the Navy "dictated and . . . reviewed and approved the contents of all technical manuals, including any cautionary language or emphasis." That the instruction manuals reviewed by May did not contain warnings because the Navy dictated whether warnings could be included in the manuals is not relevant to this appeal. This fact may be relevant to the government contractor defense, which was not the basis for the Circuit Court's summary judgment ruling. *See Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988) (holding a state-prescribed duty of care may be preempted when a contractor cannot comply with both this duty and its contractual obligations to the federal government). Although the Circuit Court was "troubled" by the issue of the manuals, the court found that the question "boil[ed]" down to whether a manufacturer—be it a civilian contractor, military contractor, or some other type of manufacturer—had a duty to warn of component parts that it never touched. On a ruling granting summary judgment, an appellate court will ordinarily only review the issue decided by the trial court. *See Higginbotham v. Pub. Serv. Comm'n of Md.*, 412 Md. 112, 147, 985 A.2d 1183, 1203 (2009) ("It is a 'rule of Maryland procedure that, in appeals from grants of summary judgment, Maryland appellate courts, as a general rule, will

14

should have known of the dangers of asbestos but still sold a product containing asbestos without warning of the dangers, they should be assigned some moral blame. *Cf. Georgia Pac., LLC v. Farrar*, 432 Md. 523, 535, 69 A.3d 1028, 1036 (2013) (stating that "the danger of exposure to asbestos in the workplace was well-recognized at least by the 1930s . . . ."); *Eagle-Picher Indus., Inc. v. Balbos*, 326 Md. 179, 194–97, 604 A.2d 445, 452–53 (1992) (concluding that sufficient evidence existed for a jury to find that asbestos manufacturer knew or should have known of the dangers of asbestos prior to 1944). That Respondents were capable of timely providing the pumps to the Navy as part of a war effort mitigates moral blame. Overall, this factor tilts slightly in favor of Respondents.

(v) The "***policy of preventing future harm***" is a neutral factor. *See Patton*, 381 Md. at 637, 851 A.2d at 571. There is evidence that manufacturers ceased using asbestos in the mid-1980s when a safer component became available. That lessens the significance of this factor. But it is difficult to forecast what impact our decision to find a duty under these circumstances might have on safety procedures, including warnings, of other manufacturers using other expendable, potentially dangerous component parts.

(vi) The "***availability, cost and prevalence of insurance***." *Id.* Petitioner highlights that duty is determined at the time of sale and that insurance was generally available to cover the risks of asbestos at the time Respondents sold their pumps to the Navy. Petitioner

---

consider only the grounds upon which the [trial] court relied in granting summary judgment.'") (emphasis omitted) (quoting *Lovelace v. Anderson*, 366 Md. 690, 695, 785 A.2d 726, 729 (2001)). Accordingly, the government contractor defense, and others, may be addressed on remand.

accentuates that not only was insurance for these risks available, but also that Respondents obtained insurance coverage. Indeed, Respondents implicitly acknowledge in their brief that they have some pre-1986 insurance coverage available to them.

Respondents, however, frame this factor as whether insurance for the risk could be procured today and cite *Coates v. Southern Maryland Electric Cooperative, Inc.*, for the proposition that this factor is forward-looking. 354 Md. 499, 731 A.2d 931 (1999). The issue in *Coates* was whether a utility company owed a duty to plaintiffs, who crashed into a utility pole in a car accident. *Id.* at 503, 731 A.3d at 933. Respondents assert that one reason the court in *Coates* rejected the proposed duty was because it was concerned that imposing a duty would "quickly remove the availability of affordable liability insurance for utilities." *Id.* at 524, 731 A.2d. at 944. The horse is already out of the barn on this one—most, if not all, insurance policies now contain asbestos exclusions. Respondents even recognize this point when they declare "that liability for coverage for asbestos risks has been unavailable in the market at any price" since the mid-1980s. Thus, the availability of insurance counsels in favor of imposing a duty.

### Balancing the Factors

As we have said, in negligence cases involving personal injury, the principal determinant of duty is foreseeability. *Doe v. Pharmacia & Upjohn Co., Inc.*, 388 Md. 407, 416, 879 A.2d 1088, 1093 (2005); *Jacques v. First Nat'l Bank of Md.*, 307 Md. 527, 534–35, 515 A.2d 756, 759–60 (1986). The foreseeability of harm to workers servicing pumps with asbestos gaskets and packing is especially strong where a manufacturer knows or should know that these components are necessary to the proper functioning of its product

16

and must be replaced periodically. Evaluating the other factors, we consider that four factors favor imposing a duty, one is neutral, and only one slightly tips against imposing a duty. When these factors are considered along with the predominant foreseeability factor, finding a duty becomes the clear choice. Thus, we conclude that the duty to warn in this context exists in the limited circumstances when (1) a manufacturer's product contains asbestos components, and no safer material is available; (2) asbestos is a critical part of the pump sold by the manufacturer; (3) periodic maintenance involving handling asbestos gaskets and packing is required; and (4) the manufacturer knows or should know of the risks from exposure to asbestos.

We have recognized that "[a]t its core, the determination of whether a duty exists represents a policy question of whether the specific plaintiff is entitled to protection from the acts of the defendant." *Gourdine*, 405 Md. at 745, 955 A.2d at 783; *see Patton*, 381 Md. at 637, 851 A.2d at 571 ("In determining whether a duty exists, 'it is important to consider the policy reasons supporting a cause of action in negligence.'") (quoting *Valentine v. On Target, Inc.*, 353 Md. 544, 550, 727 A.2d 947, 950 (1999)).

Respondents warn that imposing liability here would be poor public policy and inflict "crushing transaction costs for the ongoing support of litigation against defendants who did not manufacture or sell the asbestos components encountered by plaintiffs." As for public policy in this context, we look not to a defendant's litigation costs, but rather, the well-settled principles of tort law, and its foremost question of duty. Here we impose a duty on a manufacturer to warn when its product not only has asbestos components, but also cannot function properly without these hazardous components, and a machinist will

17

be exposed to the asbestos during necessary, periodic replacement of the parts with other asbestos-containing parts. This is a narrow and limited duty. Cabining the duty in this way serves the policy of preventing harm without exposing manufacturers to limitless liability for products they did not manufacture or sell.

We have seriously considered the California Supreme Court's decision in *O'Neil v. Crane Co.*, 266 P.3d 987 (Cal. 2012)—a case cited frequently by Respondents as a seminal case supporting their claim that manufacturers cannot be held liable for harm arising from asbestos-containing component parts supplied by third parties.[15] The California high court ruled against the plaintiffs on grounds that the defendants did not place into the stream of commerce the product that injured the plaintiffs. *Id.* at 991. But even *O'Neil* recognized there might be circumstances where a manufacturer could be strictly liable for products it has not placed into the stream of commerce.[16]

---

[15] *Schwartz v. Abex Corp.*, No. 2:05-CV-02511-ER, 2015 WL 3387824, at *10 n.58 (E.D. Pa. May 27, 2015) (describing *O'Neil* as "generally considered to be a clear recognition" that manufacturers cannot be held liable for the dangers of asbestos-containing component parts supplied by third parties); Victor E. Schwartz & Mark A. Behrens, *Asbestos Litigation: The "Endless Search for A Solvent Bystander,"* 23 Widener L.J. 59, 92 (2013) (stating that the California Supreme Court's unanimous decision in *O'Neil* "is perhaps the most significant" case holding that defendants are only responsible for harms caused by their own products).

[16] Several courts point out that *O'Neil* does not stand for the proposition that a manufacturer can **never** be liable for component parts it has not manufactured or placed into the stream of commerce. *See, e.g.*, *Willis v. Buffalo Pumps Inc.*, 34 F. Supp. 3d 1117, 1123 (S.D. Cal. 2014) ("While *O'Neil* limited a defendant's liability for third-party components, it did not eliminate the possibility."); *Quirin*, 17 F. Supp. 3d at 770 (observing that the court in *O'Neil* "qualified its conclusion that the defendant . . . could not be held liable for products manufactured by third parties"); *Schwartz*, 2015 WL 3387824, at *10 n.58 (noting that *O'Neil* "contains indications of potential exceptions to the general rule

18

The California Supreme Court explicitly held that "a product manufacturer may not be held liable in strict liability or negligence for harm caused by another manufacturer's product **unless** the defendant's own product contributed substantially to the harm, or the defendant participated substantially in creating a harmful combined use of the products." *Id.* at 991 (emphasis added).[17] The *O'Neil* court thus recognized that a manufacturer is generally not liable for component parts it did not touch, but can be liable in narrow circumstances.

Moreover, the court based its decision at least in part on its reading of the factual record to mean that the manufacturer's pumps and valves did not need asbestos-containing components to function properly. *Id.* at 1004 (asserting that "the evidence did not establish that defendants' products *needed* asbestos-containing components or insulation to function properly") (emphasis added). Other courts have followed *O'Neil* in drawing this distinction and acknowledge that different evidentiary records can yield different determinations of liability. *See Morgan v. Bill Vann Co., Inc.*, 969 F. Supp. 2d 1358, 1368

---

[that a manufacturer is not liable for products it has not placed into the stream of commerce]").

[17] The court put it this way later in the opinion:

> We reaffirm that a product manufacturer generally may not be held strictly liable for harm caused by another manufacturer's product. The only exceptions to this rule arise when the defendant bears some direct responsibility for the harm, either because the defendant's own product contributed substantially to the harm, or because the defendant participated substantially in creating a harmful combined use of the products.

*O'Neil v. Crane Co.*, 266 P.3d 987, 1005 (Cal. 2012).

19

(S.D. Ala. 2013) ("The record is devoid of evidence from which a reasonable fact finder could conclude that the Durco pumps in use at Alabama River Pulp were designed to *require* asbestos packing, to the exclusion of other kinds of packing materials.") (emphasis in original).

Applying our four-part test in this case, it is undisputed that Respondents sold pumps with asbestos-containing components to the Navy. In contrast to *O'Neil* where "the evidence did not establish that defendants' products needed asbestos-containing components or insulation to function properly," 266 P.3d at 1004, the record here contains evidence that Respondents' pumps required asbestos-containing components to function because no other suitable material could be used in high temperature applications. This case is similar to *Quirin*, where the court distinguished the record before it from that in *O'Neil* in concluding that manufacturers had a duty to warn. *See Quirin*, 17 F. Supp. 3d at 770 ("[I]n contrast [to *O'Neil*], the record contains sufficient evidence for a reasonable jury to conclude that [the manufacturer's] valves required asbestos-containing components to function in the high-heat applications for which they were marketed."). The *Quirin* court noted that although the manufacturer cited evidence that non-asbestos materials could be used with its product, "*nothing in the record* indicate[d] that such materials were suitable for high-heat applications." *Id.* (emphasis added). Respondents' manuals also contained sections on maintenance that detailed how to replace gaskets and packing, as well as a section on how to order replacement parts—but no warning about the danger of asbestos. May testified that he removed "hundreds and hundreds and hundreds of gaskets" in the over 18 years he served in the Navy.

20

In addition, the record contains sufficient evidence for a reasonable jury to conclude that warnings, had they been given, would have reached May. May testified that he would go to the log room and consult the instruction manuals on any piece of equipment he serviced. Moreover, as Respondents' state of knowledge about the dangers of asbestos was not the subject of their motion for summary judgment, we do not address the sufficiency of evidence adduced by Petitioner on this issue. *See Higginbotham v. Pub. Serv. Comm'n of Md.*, 412 Md. 112, 147, 985 A.2d 1183, 1203 (2009) ("It is a 'rule of Maryland procedure that, in appeals from grants of summary judgment, Maryland appellate courts, as a general rule, will consider only the grounds upon which the [trial] court relied in granting summary judgment.'") (emphasis omitted) (quoting *Lovelace v. Anderson*, 366 Md. 690, 695, 785 A.2d 726, 729 (2001)). Summary judgment on Petitioner's negligent failure to warn claims was thus inappropriate.[18]

## II.     Strict Liability Failure to Warn

In *Phipps v. General Motors Corp.*, 278 Md. 337, 352–53, 363 A.2d 955, 963 (1976), Maryland embraced the concept of strict liability as a basis for products liability

---

[18] To the extent that Respondents argue that May would not have heeded any warnings had they been printed in the instruction manuals, there is a presumption that a plaintiff will heed any warning given. *See U.S. Gypsum Co. v. Mayor & City Council of Balt.*, 336 Md. 145, 162, 647 A.2d 405, 413 (1994) (citations omitted) (asserting that Maryland courts have "long recognized a presumption that plaintiffs would have heeded a legally adequate warning had one been given"); *see also Eagle-Picher Indus., Inc. v. Balbos*, 326 Md. 179, 229, 604 A.2d 445, 469 (1992) (noting that "[t]he Maryland 'presumption' at a minimum means that jurors are entitled to bring to their deliberations their knowledge of the 'natural instinct' and 'disposition' of persons to guard themselves against danger").

and expressly adopted the elements contained in the Restatement (Second) of Torts § 402A (1965). Section 402A provides in pertinent part:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
> > (a) the seller is engaged in the business of selling such a product, and
> > (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

In *Owens-Illinois, Inc. v. Zenobia*, we considered Comment j of the Restatement § 402A applicable to failure to warn claims predicated on strict liability. 325 Md. 420, 436, 601 A.2d 633, 641 (1992) ("The *Phipps* opinion expressly indicated that our adoption of § 402A included the official comments.") (citing *Phipps*, 278 Md. at 346, 363 A.2d at 959–60). Comment j explains that a seller is only required to give a warning "if he has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge" of the product's dangerous propensity. Restatement (Second) of Torts § 402A cmt. j. Relying on Comment j, the Court in *Zenobia* thus determined that knowledge is an essential element of a strict liability failure to warn claim. 325 Md. at 437, 601 A.2d at 641.

Consequently, we recognized that "in a failure to warn case governed by the Restatement § 402A and Comment j, negligence concepts to some extent have been grafted onto strict liability." *Zenobia*, 325 Md. at 435, 601 A.2d at 640; *see* David G. Owen, *Products Liability Law* § 10.4, at 668 (3d ed. 2015) ("[C]omments j and k[] address the duty to warn in negligence terms and effectively provide that the duty to warn under § 402A

22

is limited to foreseeable risks.").  More recently, we acknowledged that "negligence concepts and those of strict liability have 'morphed together' . . . in failure to warn cases." *Gourdine*, 405 Md. at 743, 955 A.2d at 782; *id.* ("Duty, thus, is an essential element of both negligence and strict liability causes of action for failure to warn.").[19]

As with negligence, Respondents argue that they cannot be strictly liable for asbestos components they have not manufactured, marketed, sold, or otherwise placed into

---

[19] This is not to say that strict liability and negligent failure to warn claims are equivalent.  *See Mazda Motor of Am., Inc. v. Rogowski*, 105 Md. App. 318, 325–26, 659 A.2d 391, 394–95 (1995), *cert. denied,* 340 Md. 501, 667 A.2d 342 (1995) (asserting that negligent and strict liability claims for an alleged failure to warn bear "a strong resemblance" to one another, yet espousing that there is a distinction between negligent and strict liability failure to warn claims); *Morgan v. Graco Children's Prods., Inc.*, 184 F. Supp. 2d 464, 466 (D. Md. 2002) ("It is clear from this case [*Rogowski*] and others in Maryland that failure to warn as a cause of action only states a claim *in the context of forms of tort liability* recognized in Maryland.") (emphasis added); *see also Banks v. Iron Hustler Corp.*, 59 Md. App. 408, 422, 475 A.2d 1243, 1250 (1984)  ("There is nothing in *Phipps* to suggest that the traditional action for negligence was to be subsumed in or replaced by the newly adopted strict liability.  Indeed, as subsequent cases make clear, strict liability merely takes its place alongside negligence . . . as an alternative basis of liability.").
    These two theories of liability are also distinct from a practical standpoint.  In *Zenobia*, we observed that the availability of contributory negligence as a defense is an important difference between strict liability and negligent failure to warn claims:

> We note that despite the overlap of negligence principles in a strict liability failure to warn case, strict liability differs from a negligence cause of action in that contributory negligence is not a defense to a strict liability claim. *Ellsworth v. Sherne Lingerie, Inc.*, 303 Md. 581, 597–98, 495 A.2d 348, 356–57 (1985).  In addition, in light of the other comments to § 402A of the Restatement (Second) of Torts, which apply in defective design, defective construction, and failure to warn cases, there are some differences between a negligent failure to warn case and a failure to warn based upon § 402A and Comment j.

325 Md. at 435 n.7, 601 A.2d at 640 n.7.

23

the stream of commerce. Ignoring the economic benefit from the sale of the pump itself, Respondents contend that strict liability is justified only when the defendant derives an economic benefit from its component parts, as well as the ability to test and inspect the component. They claim that these justifications are not advanced by imposing strict liability on a manufacturer for component parts that it did not place into the stream of commerce. Respondents even quote *Gourdine*, 405 Md. at 739–40, 955 A.2d at 779–80, in asserting that Maryland law holds that the "framework for analysis in negligent failure to warn cases . . . . substantially mirrors that of a strict liability action."

Because of the intersections between strict liability and negligent failure to warn claims, we conclude that a manufacturer has a duty to warn of asbestos-containing replacement components that it has not placed into the stream of commerce in strict liability in the same narrow circumstances as in negligence. That is, a manufacturer will have a duty to warn of asbestos-containing replacement components that it has not placed into the stream of commerce in strict liability only where (1) its product contains asbestos components, and no safer material is available; (2) asbestos is a critical part of the pump sold by the manufacturer; (3) periodic maintenance involving handling asbestos gaskets and packing is required; and (4) the manufacturer knows or should know of the risks from exposure to asbestos.[20]

---

[20] The dissent asserts that there is no need to weigh the factors articulated in *Patton* to determine whether Respondents owed May a duty. The dissent states that "*Patton* involved negligence, not strict products liability; as such, in *Patton*, we neither commented on nor added to the understanding of what is required to bring a case for strict products liability." The dissent ignores or misunderstands the record in this case. Petitioner brought failure to warn products liability claims grounded in both strict liability *and* negligence.

24

In strict liability, Respondents' theory that no duty arises when the defendant never touched the offending asbestos components is equivalent to the defense that the product was substantially modified after sale. But, Petitioner rightly counters that the duty to warn is only absolved if there is substantial modification to the product between the time of sale and when the injured party encountered the product. *See* Owen, *supra* at § 15.3, at 958 (asserting that "The Restatement (Second) of Torts . . . address[es] this issue in terms of whether the dangerous defect was in the component at the time it left the component supplier's control, or whether the danger was introduced into the product through 'further processing or other substantial change.'"). As the Court of Special Appeals explained in *Banks v. Iron Hustler Corp.*, strict liability "under § 402A is expressly conditioned upon the product reaching the user 'without substantial change in the condition in which it is sold.'" 59 Md. App. 408, 432, 475 A.2d 1243, 1255 (1984) (quoting Restatement (Second) of Torts § 402A(1)(b)).

---

Thus, contrary to the dissent's maintaining that *Patton* "offers zero support for the conclusion that Respondents had a duty to warn," it is wholly appropriate to consider the *Patton* factors in analyzing Petitioner's negligent failure to warn claim. Moreover, as to the pertinence of the *Patton* factors in examining Petitioner's strict liability failure to warn claim, the dissent overlooks our recognition that the framework for analysis in strict liability failure to warn cases "substantially mirrors" that of a negligent failure to warn action. *Gourdine*, 405 Md. at 739–40, 955 A.2d at 779–80; *see generally* David G. Owen, *Products Liability Law* § 9.2, at 561 (3d ed. 2015) (discussing how "most courts now agree that these types of claims [negligent and strict liability failure to warn] are nearly, or entirely, identical . . . ."). Once we have determined the existence of a duty to warn for the negligence claim, we are hard-pressed to deny a comparable duty in the strict liability failure to warn claim.

25

Petitioner asserts and Respondents do not deny that the asbestos gaskets and packing that replaced the component parts in the original pumps sold by Respondents were identical to the original components.

Our four elements necessary to establish duty in this context, stated above, ensure compliance with the substantial modification doctrine. Part of the first element—that a manufacturer's product contains asbestos—requires that a manufacturer's product be defective when it leaves the manufacturer's hands. The second element—the product will not function properly without using asbestos—requires that the manufacturer's product remains defective when the user of that product suffers harm. The necessary replacement of asbestos components with identical components cannot be said to constitute a substantial modification. Consequently, our test for determining whether a manufacturer has a duty to warn of asbestos-containing replacement components that it has not placed into the stream of commerce incorporates the substantial modification doctrine.

We are not persuaded by Respondents' argument that the asbestos gaskets and packing themselves are the "product" for purposes of strict liability analysis. Common sense tells us that the pumps were what Respondents sold to the Navy, and the gaskets and packing are included within that product.

We have studied *Ford Motor Co. v. Wood* and the out-of-state cases cited by Respondents refusing to impose any liability when the offensive product was a replacement

from a third party.[21]  But we fault these cases for failing to recognize the exception to the "bare metal defense" when the ultimate product sold—here, the pump—cannot function properly without the expendable and noxious component.  *See Surre*, 831 F. Supp. 2d at 801; *Quirin*, 17 F. Supp. 3d at 769–70; *cf. O'Neil*, 266 P.3d at 996 n.6, 1005.  When an expendable noxious component such as asbestos is essential to a product that is sold, we should not consider the expendable component as the "product."  Rather we should focus on the final product, the pump.  It is undisputed that the pump contained asbestos, and there is sufficient evidence that the asbestos was essential to its operation, needed periodic

---

[21] *See Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492, 494–95 (6th Cir. 2005); *Faddish v. Buffalo Pumps*, 881 F. Supp. 2d 1361, 1368, 1372–73 (S.D. Fla. 2012); *Thurmon v. A.W. Chesterton, Inc.*, 61 F. Supp. 3d 1280, 1283, 1286 (N.D. Ga. 2014).

Petitioner and Respondents discuss three Washington Supreme Court decisions in their dispute over whether a manufacturer can be strictly liable for asbestos-containing replacement parts that it did not place into the stream of commerce.  *Compare Simonetta v. Viad Corp.*, 197 P.3d 127, 138 (Wash. 2008) (holding "[b]ecause [product manufacturer] was not in the chain of distribution of the dangerous product, we conclude not only that it had no duty to warn under negligence, but also that it cannot be strictly liable for failure to warn"), *and Braaten v. Saberhagen Holdings*, 198 P.3d 493 (Wash. 2008) (holding no duty to warn of the dangers of exposure to asbestos in products it did not manufacture and for which the manufacturer was not in the chain of distribution), *with Macias v. Saberhagen Holdings, Inc.*, 282 P.3d 1069 (Wash. 2012) (holding duty to warn of exposure to asbestos when manufacturers were not in the chain of distribution of the asbestos-containing products).

The most recent of these cases favors a duty to warn, but it does not overrule the earlier cases concluding that no duty exists.  *See Macias*, 282 P.3d at 1083 ("While the chain-of-distribution requirement is undoubtedly the general rule . . . it is not absolute.").  The opaqueness of Washington law makes it an uncertain predicate for either the majority or dissent.  *See Schwartz*, 2015 WL 3387824, at *13 ("[I]t is not entirely clear from the rationale set forth in *Macias* whether and how a product manufacturer (such as a valve or pump manufacturer) would be liable under Washington law for internal component parts (such as replacement gaskets and packing) that it did not manufacture or supply that are used in connection with its product.").

replacement, and was dangerous. Finally, as Respondents' state of knowledge regarding the dangers of asbestos was not the subject of their summary judgment motion, we do not address the sufficiency of evidence adduced by Petitioner on this issue. *See Higginbotham*, 412 Md. at 147, 985 A.2d at 1203. Thus, Petitioner has supplied sufficient evidence to survive Respondents' motion for summary judgment.

We must stress that a manufacturer is generally not strictly liable for products it has not manufactured or placed into the stream of commerce. As the Court in *Phipps* cautioned: "Despite the use of the term 'strict liability' the seller is not an insurer, as absolute liability is not imposed on the seller for any injury resulting from the use of his product." 278 Md. at 351–52, 363 A.2d at 963. Our holding that a manufacturer has a duty in strict liability to warn of asbestos-containing replacement components that it has not placed into the stream of commerce in limited circumstances is in accord with the recognition that the reach of strict liability is not boundless. Mindful of the Court's admonition in *Phipps* that a seller is not an insurer, we carefully decline to extend the duty to warn to all instances when a manufacturer can foresee that a defective component may be used with its product.

## CONCLUSION

This Court concludes that a manufacturer will have a duty to warn under negligence and strict liability when (1) its product contains asbestos components, and no safer material is available; (2) asbestos is a critical part of the pump sold by the manufacturer; (3) periodic maintenance involving handling asbestos gaskets and packing is required; and (4) the manufacturer knows or should know the risks from exposure to asbestos.

28

We agree with Petitioner that Maryland law strikes a balance between the need for persons injured by products to obtain compensation and justice and the canon that product manufacturers are not absolute insurers of their products.  To strike this balance, we preserve the rule that a company is not generally liable for asbestos-containing parts it does not manufacture or place into the stream of commerce, but recognize that narrow circumstances exist where a manufacturer can be liable for products it has not touched.  Accordingly, we reverse the Court of Special Appeals' affirmance of summary judgment on Petitioner's negligent and strict liability failure to warn claims.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY RESPONDENTS.**

Circuit Court for Baltimore City
Case No. 24X11000451

Argued: September 3, 2015

IN THE COURT OF APPEALS

OF MARYLAND

No. 5

September Term, 2015

_____

RUTH BELCHE MAY, INDIVIDUALLY
AND AS EXECUTRIX OF THE ESTATE OF
PHILIP ROYCE MAY

v.

AIR & LIQUID SYSTEMS, CORP., ETC., ET
AL.

_____

Barbera, C.J.
Battaglia
Greene
Adkins
McDonald
Watts
Harrell, Jr., Glenn T. (Retired,
Specially Assigned),

JJ.

_____

Dissenting Opinion by Watts, J., which
Battaglia, J., joins.

_____

Filed:  December 18, 2015

Respectfully, I dissent. I would affirm the judgment of the Court of Special Appeals. In this case, Petitioner contends that, in a products liability case, a manufacturer may be liable for an individual's injuries caused by a third party's replacement parts; and Petitioner points out that other jurisdictions have held that there is a duty to warn in such circumstances.

Respondents respond that they are not liable in tort for any injury caused by exposure to asbestos from other manufacturers' products; *i.e.*, Respondents cannot be held liable for replacement parts or any later-added parts made and sold by others. Respondents contend that "Maryland courts[,] applying [] strict liability principles[,] have never held a manufacturer liable for injury caused by another manufacturer's product, even when foreseeably used with the manufacturer's own product." (Emphasis omitted). Stated otherwise, Respondents assert that, as the Court of Special Appeals did, this Court should reject the imposition of strict liability on a manufacturer for harm caused by another's product. And, I agree.

I would hold that manufacturers of products cannot be held liable for failing to warn of the dangers of replacement or later-added parts that they neither manufactured nor placed into the stream of commerce. Thus, here, having undisputedly neither manufactured, marketed, sold, nor otherwise placed into the stream of commerce the replacement or later-added parts that led to Mr. May's exposure to asbestos and subsequent injury, Respondents cannot be held liable for a failure to warn of the dangers of those asbestos-containing products. As discussed in Phipps v. Gen. Motors Corp., 278 Md. 337, 340-41, 363 A.2d 955, 957 (1976) and as set forth in Restatement (Second) of Torts § 402A

(1965)—and as developed through Maryland case law—strict liability is tied to a person or entity that is a seller or manufacturer of a product. Indeed, in <u>Phipps</u>, at no point did this Court suggest that strict liability was applicable to a person or entity outside of the stream of commerce, *i.e.*, to a non-seller or non-manufacturer of the injury-causing product. And, Restatement (Second) of Torts § 402(A) is entitled "Special Liability of **Seller** of Product for Physical Harm to User or Consumer." (Emphasis added). To be strictly liable in tort, one must be a seller or manufacturer of the product at issue, someone in the chain of distribution of the product. <u>See, e.g.</u>, William L. Prosser, <u>The Fall of the Citadel (Strict Liability to the Consumer)</u>, 50 Minn. L. Rev. 791, 799-800 (1966) ("What is needed is a shortcut which makes any supplier in the chain liable directly to the user."). That a person must be a seller or manufacturer of the product that caused the injury to be strictly liable is one of the core principles of products liability, and is the starting point for any analysis of strict liability.

In <u>Phipps</u>, 278 Md. at 353, 363 A.2d at 963, for the first time, this Court adopted the theory of strict liability set forth in the Restatement (Second) of Torts § 402A, which states:

> (1) One who **sells** any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>     (a) the **seller** is engaged in the business of **selling** such a product, and
>     (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is **sold**.
>
> (2) The rule stated in Subsection (1) applies although
>     (a) the **seller** has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the **seller**.

(Emphasis added).  This Court stated that, to recover in strict liability, a plaintiff must establish that "(1) the product was in defective condition at the time that it left the possession or control of the **seller**, (2) [] it was unreasonably dangerous to the user or consumer, (3) [] the defect was a cause of the injuries, and (4) [] the product was expected to and did reach the consumer without substantial change in its condition."  Phipps, 278 Md. at 344, 363 A.2d at 958 (emphasis added).  We concluded that adoption of Restatement (Second) of Torts § 402A was appropriate because "there is no reason why a party injured by a defective and unreasonably dangerous product, which[,] when placed on the market[,] is impliedly represented as safe, should bear the loss of that injury when the **seller** of that product is in a better position to take precautions and protect against the defect."  Id. at 352-53, 363 A.2d at 963 (emphasis added).

We noted that one of the justifications for imposing strict liability in tort on manufacturers was that "the cost of injuries caused by defective products should in equity be borne by the **manufacturers** that put such products on the market[.]"  Id. at 343, 363 A.2d at 958 (emphasis added) (citation and internal quotation mark omitted).  We found "persuasive" the "reasons for adopting strict liability [] summarized in Comment c to [Restatement (Second) of Torts §] 402A":

> [T]he justification for [] strict liability has been said to be that the **seller, by marketing his product** for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that **reputable sellers will stand behind their goods**; that public

- 3 -

policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon **those who market them**, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are **those who market the products**.

Id. at 352, 363 A.2d at 963 (emphasis added) (internal quotation mark omitted).  More recently, in Scapa Dryer Fabrics, Inc. v. Saville, 418 Md. 496, 510, 16 A.3d 159,167 (2011), this Court quoted the following proposition of law: "Maryland courts apply traditional products liability law[,] which requires the plaintiff to prove that the defendant **manufactured** the product [that] allegedly caused the injury."  (Quoting Reiter v. ACandS, Inc., 179 Md. App. 645, 665, 947 A.2d 570, 582 (2008), aff'd sub nom. Reiter v. Pneumo Abex, LLC, 417 Md. 57, 8 A.3d 725 (2010)) (emphasis added).

This core principle was reaffirmed in Ford Motor Co. v. Wood, 119 Md. App. 1, 703 A.2d 1315, cert. denied, 349 Md. 494, 709 A.2d 139 (1998).[1]  In Wood, 119 Md. App. at 37, 703 A.2d at 1332, absent "a demonstration of a similar degree of fault linked to the specific components that caused the plaintiff's injuries," the Court of Special Appeals was "unwilling to hold that a vehicle manufacturer had a duty to warn of the dangers of a product that it did not manufacture, market, sell, or otherwise place into the stream of commerce."  In Wood, id. at 10-11, 703 A.2d at 1319, Mrs. Wood claimed that her husband contracted mesothelioma and died because he had been exposed to respirable asbestos fibers while working in a garage where mechanics worked on brakes and clutches on Ford

---

[1]Wood was abrogated in part on grounds not relevant here as stated in John Crane, Inc. v. Scribner, 369 Md. 369, 396, 800 A.2d 727, 743 (2002).

vehicles. A jury found in Mrs. Wood's favor. See id. at 11, 703 A.2d at 1319. The Court of Special Appeals held that the trial court erred in denying Ford's motion for judgment because Mrs. Wood had failed to "present sufficient evidence that Mr. Wood was exposed to *Ford's* brake and clutch products with the requisite degree of frequency, proximity[,] or regularity." Id. at 29, 30, 703 A.2d at 1328, 1329 (emphasis in original). The Court of Special Appeals noted that "it was undisputed that the vehicles did not contain their original brake and clutch parts" when Mr. Wood worked at the garage. Id. at 30, 703 A.2d at 1329. This led the Court of Special Appeals to determine that "the evidence simply was too thin to demonstrate the Mr. Wood frequently and regularly worked in proximity to mechanics applying Ford brake and clutch products." Id. at 33, 703 A.2d at 1330.

As an alternative ground to uphold the jury's verdict, Mrs. Wood contended that, "regardless of who manufactured the replacement parts, there was sufficient evidence from which the jury could infer that Ford had a duty to warn of the dangers involved in replacing the brakes and clutches on its vehicles." Id. at 33, 703 A.2d at 1330. The Court of Special Appeals rejected that contention, first holding that Mrs. Wood had not tried the case on that theory and, as such, Ford had not been afforded the opportunity to defend against that theory. See id. at 33, 703 A.2d at 1330. The Court of Special Appeals also held that, even had the case been tried on such a theory, Ford would not be "liable for unreasonably dangerous replacement component parts that it neither manufactured nor placed into the stream of commerce." Id. at 34, 703 A.2d at 1331. The Court of Special Appeals surveyed the law on the issue and noted that, "[a]s a general matter, . . . courts that ha[d] considered the issue ha[d] held that a vehicle manufacturer may be held liable in damages for

- 5 -

component parts manufactured by another only if the vehicle manufacturer incorporated the defective component into its finished product." Id. at 34, 703 A.2d at 1331 (citations omitted). The Court of Special Appeals observed that such "assembler's liability" was

> justified because the assembler derives an economic benefit from the sale of a product that incorporates the component; the assembler has the ability to test and inspect the component when it is within its possession; and, by including the component with its finished product, the assembler represents to the consumer and ultimate user that the component is safe.

Id. at 34, 703 A.2d at 1331 (citations omitted).

Conversely, the Court of Special Appeals observed that other courts had "noted that such justifications are not advanced by making a manufacturer liable for component parts that it did not market or place into the stream of commerce, and thus, have limited liability to those entities in the defective component's chain of distribution." Id. at 34-35, 703 A.2d at 1331 (citations omitted). As such, "limiting liability to those in the chain of distribution [] not only [was] equitable, [but also] preserve[d] a bright line in the law of strict liability[.]" Id. at 35, 703 A.2d at 1331 (citation omitted). The Court of Special Appeals quoted with approval the following explanation in favor of preserving the bright line:

> [T]he need to preserve a bright line in the law of strict products liability (that is, a chain of title rule) is evident. For example, if an assembler were strictly liable for an "identical" replacement part purchased from a third party, the court would be forced to conduct an inquiry into whether the original and the replacement parts were manufactured by the same company.... If so, whether the original and replacement parts were sufficiently similar? ... If so, whether the original and replacement parts were manufactured utilizing a similar process and similar materials? If so, at what point in time did endorsement by the assembler of the component manufacturer come to an end, if ever? Each of these questions would have to be answered in order to support liability under an "endorsement" theory, notwithstanding the other justifications for strict liability.

Id. at 35, 703 A.2d at 1331 (citation omitted) (alteration and ellipses in original). Accordingly, the Court of Special Appeals declined to hold that Ford had "a duty to warn of the dangers of a product that it did not manufacture, market, sell, or otherwise place into the stream of commerce." Id. at 37, 703 A.2d at 1332. The Court of Special Appeals further noted that, "regardless of whether Ford's duty to warn sounds in negligence or strict liability, it has a duty to warn only by virtue of its **manufacture or sale** of unreasonably dangerous products." Id. at 36 n.7, 703 A.2d at 1331 n.7 (emphasis added).

Wood remains persuasive, good law on this point—and, indeed, is simply a restatement of a very basic principle of strict liability. I wholeheartedly agree with the Court of Special Appeals that:

> *Wood* is dispositive of this case for the simple reason that the Mays had no evidence that any of the [Respondent]-manufacturers manufactured, marketed, sold, or otherwise placed into the stream of commerce any of the asbestos-containing gaskets or packing to which Mr. May was exposed. It was undisputed that Mr. May was exposed to asbestos only because of his exposure to replacement parts that the [Respondent-]manufacturer[s] neither made nor [otherwise] placed into the stream of commerce. The circuit court, therefore, correctly directed the entry of summary judgment in favor of those [Respondents] and against the Mays.

May v. Air & Liquid Sys. Corp., 219 Md. App. 424, 432, 100 A.3d 1284, 1288 (2014) (footnote omitted). Simply put, to be strictly liable in tort one must be a seller or manufacturer of the product—original, replacement, or later-added—that caused injury. I would affirm this bedrock principle today.

Petitioner would have this Court expand strict liability to those who are neither the seller nor the manufacturer of an injury-causing product. In my view, to adopt Petitioner's position would be to impermissibly expand strict liability in all products liability cases—

not just those involving asbestos products—and blur beyond recognition the existing bright line that, to be strictly liable, the defendant must have either manufactured or sold the injury-causing product. Indeed, to adopt Petitioner's view would lead to numerous questions and analyses that would further complicate an already complex litigation process, including inquiry as to whether the original and replacement parts are sufficiently similar, whether they are manufactured in a similar fashion with similar materials, whether the manufacturer knew of or anticipated the use of replacement parts, whether the replacement parts were integral to the product's operation, and whether any other types of suitable replacement parts were available. This Court should not countenance such an expansive inquiry to impose liability on a defendant who neither manufactured nor sold the injury-causing product.

Equally as significant, holding as Petitioner urges would overturn decades of strict liability law in Maryland established in the wake of Phipps. As a matter of public policy, a defendant who neither manufactures, sells, nor otherwise places a product into the stream of commerce generally is not in a "position to take precautions and protect against the defect." Phipps, 278 Md. at 353, 363 A.2d at 963. Nor is such a defendant able to "stand behind" a good that it did not manufacture or sell. Id. at 352, 363 A.2d at 963 (citation omitted). In other words, the justifications supporting imposition of strict liability—or liability for negligence, for that matter, see Wood, 119 Md. App. at 36 n.7, 703 A.2d at 1331 n.7—on a seller or manufacturer of an injury-causing product in a failure-to-warn case are absent where the defendant is neither the seller nor the manufacturer of the product. See, e.g., Gourdine v. Crews, 405 Md. 722, 743, 955 A.2d 769, 782 (2008) ("[N]egligence

concepts and those of strict liability have 'morphed together' . . . in failure[-]to[-]warn cases." (Citations omitted)).

Contrary to the Majority's analysis, in cases factually similar to the instant case, other courts have declined to hold a manufacturer liable for injury caused by another manufacturer's replacement or later-added part. For example, in O'Neil v. Crane Co., 266 P.3d 987, 991 (Cal. 2012), the Supreme Court of California held that "a product manufacturer may not be held liable in strict liability or negligence for harm caused by another manufacturer's product unless the defendant's own product contributed substantially to the harm, or the defendant participated substantially in creating a harmful combined used of the products." In O'Neil, id., Crane Co. and Warren Pumps, LLC (a Respondent in this case) "made valves and pumps used in Navy warships" and "were sued [] for a wrongful death allegedly caused by asbestos released from external insulation and internal gaskets and packing, all of which were made by third parties and added to the pumps and valves post[-]sale." It was "undisputed that [the] defendants never manufactured or sold any of the asbestos-containing materials to which [the] plaintiffs' decedent was exposed." Id. In refusing to hold that the defendants were liable, the Supreme Court of California explained:

> Recognizing [the] plaintiffs' claims would represent an unprecedented expansion of strict products liability. We decline to do so. California law has long provided that manufacturers, distributors, and retailers have a duty to ensure the safety of their products[,] and will be held strictly liable for injuries caused by a defect in their products. Yet, we have never held that these responsibilities extend to preventing injuries caused by *other* products that might foreseeably be used in conjunction with a defendant's product. Nor have we held that manufacturers must warn about potential hazards in replacement parts made by others whe[re], as here, the

- 9 -

dangerous feature of these parts was not integral to the product's design. The broad rule [that the] plaintiffs urge would not further the purposes of strict liability. Nor would public policy be served by requiring manufacturers to warn about the dangerous propensities of products [that] they do not design, make, or sell.

Id. (emphasis in original). At the conclusion of the opinion, the Supreme Court of California reiterated that it was "reaffirm[ing] that a product manufacturer generally may not be held strictly liable for harm caused by another manufacturer's product." Id. at 1005.

As another example, in Braaten v. Saberhagen Holdings, 198 P.3d 493, 495 (Wash. 2008), the defendants (including IMO Industries, Inc., a Respondent in this case) manufactured valves and pumps for Navy ships and, after the valves and pumps were installed, "the [N]avy applied asbestos-containing insulation to them"; the defendants had not "manufactured, sold, or otherwise supplied the asbestos insulation applied to their products." The Supreme Court of Washington held "that the defendant-manufacturers had no duty under common law products liability principles to warn of exposure to asbestos in the thermal insulation applied to their products by the [N]avy because a manufacturer generally has no duty to warn of hazards associated with another manufacturer's products." Id. at 503. The Supreme Court of Washington also held that there was "insufficient evidence to create a[n] issue of [material] fact with respect to whether the manufacturers had a duty to warn of the hazards of asbestos-containing packing and gaskets in or connected to their pumps and valves, and[,] as a matter of law[,] they had no duty to warn of these hazards." Id. at 503-04. The Supreme Court of Washington stated that "the policy underpinnings for strict liability . . . do not apply when a manufacturer has not placed the product in the stream of commerce." Id. at 498 (citations omitted).

Similarly, in <u>Simonetta v. Viad Corporation</u>, 197 P.3d 127, 129, 138 (Wash. 2008), the Supreme Court of Washington held that a manufacturer could not be held liable in strict liability or negligence for failing to warn of the dangers of asbestos exposure resulting from the application of another manufacturer's insulation to the original manufacturer's product (an evaporator on a Navy ship).  Specifically, the Supreme Court of Washington concluded that the original manufacturer could not "be held responsible for the asbestos contained in another manufacturer's product[,]" and because the original manufacturer "was not in the chain of distribution of the dangerous product, . . . it had no duty to warn under negligence, [and could not] be strictly liable for failure to warn."  <u>Id.</u> at 138 (footnote omitted).[2]

---

[2]To be sure, in <u>Macias v. Saberhagen Holdings, Inc.</u>, 282 P.3d 1069, 1076-77 (Wash. 2012), the Supreme Court of Washington held that manufacturers had a duty to warn of exposure to asbestos where the "manufacturers manufactured the very products that posed the risk to [the plaintiff] of asbestos exposures" and where "[t]hey were clearly in the chain of distribution of the[] products[,]" although the "manufacturers were not in the chain of distribution of products containing asbestos when manufactured."  In summarizing its holding, the Supreme Court of Washington explained:

> [T]his case comes within the general rule that a manufacturer in the chain of distribution is subject to liability for failure to warn of the hazards associated with use of its own products. *Simonetta* and *Braaten* do not control because unlike in those cases, where the manufacturers' products did not, in and of themselves, pose any *inherent* danger of exposure to asbestos, here when the products were used exactly as intended and cleaned for reuse exactly as intended they *inherently* and invariably posed the danger of exposure to asbestos.

<u>Id.</u> at 1077 (emphasis in original).  Significantly, in <u>Macias</u>, <u>id.</u> at 1080, the Supreme Court of Washington—as the Majority acknowledges, <u>see</u> Maj. Slip Op. at 27 n.21—did not overrule <u>Simonetta</u> and <u>Braaten</u>, and thus those cases remain good law.  <u>See</u> Macias, 282 P.3d at 1080 ("The chain-of-distribution requirement has long been a part of this state's product liability law. . . . *Simonetta* and *Braaten* did not alter the common law principles . . . . In the present case, the holdings of these cases simply do not apply.").

And, in Faddish v. Buffalo Pumps, 881 F. Supp. 2d 1361, 1374 (S.D. Fla. 2012), the United States District Court for the Southern District of Florida declined to impose strict liability on the defendants, "who had no control over the type of insulation [that] the Navy would choose[,] and derived no revenue from sale of asbestos-containing products used aboard" a Navy ship; indeed, "[b]ecause [the] defendants were not in the chain of distribution of the dangerous asbestos-containing products causing injury to [the plaintiff], they [could not] be charged with a duty to warn under negligence or strict liability theory." In so holding, the Court noted that "[t]he rationale underpinning the general rule of strict liability is that it logically and fairly places the loss caused by a defective product on those who create the risk and reap the profit by placing such a product in the stream of commerce, with the expectation that these entities have the greatest incentive and resources to control and spread the risk of harm posed by the product." Id. at 1369.

These cases, coupled with Maryland case law and the justifications supporting the imposition of strict products liability, as this Court adopted in Phipps, 278 Md. at 352-53, 363 A.2d at 963, convince me that, here, Respondents in this case had no duty to warn of the hazards of asbestos exposure associated with replacement or later-added parts that they neither manufactured, sold, nor otherwise placed into the stream of commerce.

Further advancing this conclusion is the circumstance that other courts, in cases involving non-asbestos products, have declined to impose liability for injury-causing products made by others that are outside of a manufacturer's chain of distribution, even if those injury-causing products are used in conjunction with the manufacturer's products. See, e.g., Dreyer v. Exel Indus., S.A., 326 F. App'x 353, 354 (6th Cir. 2009) ("Under

Michigan law, [a] manufacturer or distributor of a paint sprayer [is not] liable for a user's burn injuries where the solvent [that was] used to clean the sprayer ignited[.]"); <u>In re Deep Vein Thrombosis</u>, 356 F. Supp. 2d 1055, 1062, 1068, 1069 (N.D. Cal. 2005) (An airplane manufacturer that "did not design, manufacturer, install, replace[,] or refurbish any [] allegedly defective seating" had no duty to warn the airlines or the passengers about the defective seats.); <u>Sanders v. Ingram Equip., Inc.</u>, 531 So.2d 879, 879-80 (Ala. 1988) (In a case involving the manufacturer of a garbage packer, which was mounted onto a truck chassis that another had manufactured and where an injured resulted from a defect in the chassis, the Supreme Court of Alabama held "that a distributor or manufacturer of a nondefective component is not liable for defects in a product that it did not manufacture, sell, or otherwise place in the stream of commerce.") <u>Shaw v. Gen. Motors Corp.</u>, 727 P.2d 387, 389 (Colo. App. 1986) (A manufacturer of a truck cab and chassis was not strictly liable where a dump bed and hoist that third parties manufactured, sold, and installed without a back-up alarm.); <u>Mitchell v. Sky Climber, Inc.</u>, 487 N.E.2d 1374, 1375, 1376 (Mass. 1986) (In a case involving a manufacturer of lift motors that were used with scaffolding equipment, the Supreme Judicial Court of Massachusetts stated: "We recognize . . . no duty on a manufacturer to set forth in customers' manuals a warning of possible risk created solely by an act of another that would not be associated with a foreseeable use or misuse of the manufacturer's own product." (Citation omitted)); <u>Walton v. Harnischfeger</u>, 796 S.W.2d 225, 228 (Tex. App. 1990) (The Court of Appeals of Texas held that a crane manufacturer "had no duty to warn or instruct users of its crane about rigging [that the crane manufacturer] did not manufacture, incorporate into its crane, or [otherwise] place

- 13 -

into the stream of commerce.").

This Court's holding in <u>Patton v. U.S. Rugby Football</u>, 381 Md. 627, 637, 851 A.2d 566, 571 (2004) offers zero support for the conclusion that Respondents had a duty to warn. Petitioner contends that a fact-specific analysis, utilizing the factors set forth in <u>Patton</u>, <u>id.</u> at 637, 851 A.2d at 571, is required to determine whether a duty to warn exists. Petitioner argues that several factors weigh in favor of finding that Respondents owed a duty to warn to Mr. May, including: (1) the foreseeability of harm; (2) the degree of certainty that Mr. May suffered the injury ; (3) the closeness of the connection between Respondents' conduct and Mr. May's injury; (4) the moral blame attached to Respondents' conduct; (5) the policy of preventing future harm; (6) the extent of the burden to Respondents and consequences to the community of imposing a duty to exercise care with resulting liability for breach; and (7) the availability, cost, and prevalence of insurance for the risk involved.

Respondents respond that there was no need to weigh the <u>Patton</u> factors to determine whether a duty to warn existed. Alternatively, Respondents contend that the <u>Patton</u> factors weigh against imposing a duty to warn on Respondents.

In <u>Patton</u>, 381 Md. at 630, 643, 851 A.2d at 567, 574-75, a negligence case, this Court held that a rugby player and spectator did not establish that a special relationship existed between themselves and the tournament organizers such that the tournament organizers owed them a duty of care. In <u>Patton</u>, <u>id.</u> at 630, 851 A.2d at 567, a rugby player and his father, a spectator, while at an amateur rugby tournament, were struck by lightning. The rugby player was seriously injured; the father died. <u>See id.</u> at 630, 851 A.2d at 567. The rugby player and his family sued the tournament organizers and others for negligence.

<u>See</u> <u>id.</u> at 630, 851 A.2d at 567. This Court began its analysis by reiterating that, to make out a *prima facie* case in negligence, a plaintiff must prove, among other things, "that the defendant was under a duty to protect the plaintiff from injury[.]" <u>Id.</u> at 636, 851 A.2d at 570. We observed:

> In determining the existence of a duty of care, we considered, among other things:
>
> the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered the injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost[,] and prevalence of insurance for the risk involved.

<u>Id.</u> at 637, 851 A.2d at 571 (citation omitted). We stated that, "[w]hile foreseeability is often considered among the most important of these factors, its existence alone does not suffice to establish a duty [of care.]" <u>Id.</u> at 637, 851 A.2d at 571 (citation and internal quotation marks omitted).

I agree with Respondents that the factors outlined in <u>Patton</u> are not determinative in this case and that there was, and is, no need to weigh the factors to determine whether Respondents owed Mr. May a duty to warn. <u>Patton</u> involved negligence, not strict products liability; as such, in <u>Patton</u>, we neither commented on nor added to the understanding of what is required to bring a case for strict products liability. In <u>Patton</u>, this Court did not state that the factors necessary to determine whether a duty of care exists in negligence extend to determining whether a manufacturer in a strict liability case has a duty to warn in connection with products that it does not manufacture, market, sell, or otherwise place

- 15 -

into the stream of commerce.

In <u>Patton</u>, 381 Md. at 632, 851 A.2d at 568, the rugby player and his family brought a claim of simple negligence against tournament organizers and others based on an alleged "failure to employ proper policies and procedures to protect players and spectators at the tournament from lightning strikes." In <u>Patton</u>, this Court neither addressed nor discussed products liability, either strict liability failure to warn or negligent failure to warn; in short, there was no discussion in <u>Patton</u> regarding failure to warn in strict liability or negligent products liability cases. And if there had been such a discussion in <u>Patton</u> concerning failure to warn products liability, either strict liability or negligent, it would have been pure *dicta* with absolutely no precedential value. Thus, contrary to the Majority's assertion, <u>see</u> Maj. Slip Op. at 24-25 n.20, <u>Patton</u> does not offer support in determining whether Respondents owed a duty in this case.

In <u>Gourdine</u>, 405 Md. at 737-38, 955 A.2d at 779, this Court considered two counts of product liability, "negligence and strict liability, [in which] Ms. Gourdine allege[d] that Lilly owed a duty to Mr. Gourdine to warn Ms. Crews about the risks of the combination of [two prescription drugs]." In <u>Gourdine</u>, <u>id.</u> at 739, 955 A.2d at 779-80, quoting <u>Moran v. Faberge, Inc.</u>, 273 Md. 538, 552, 332 A.2d 11, 20 (1975), the Court recognized a framework for analysis in negligent failure to warn cases, stating:

> Based on this negligence law we think that in the products liability domain a duty to warn is imposed on a manufacturer if the item it produces has an inherent and hidden danger about which the producer knows, or should know, could be a substantial factor in bringing injury to an individual or his property when the manufacturer's product comes near to or in contact with the elements which are present normally in the environment where the product can reasonably be expected to be brought or used.

- 16 -

The Court stated that "[t]his framework substantially mirrors that of a strict liability action[.]" Gourdine, 405 Md. at 739, 955 A.2d at 780. In Gourdine, id. at 745-46, 955 A.2d at 783, although the Court later discussed one the Patton factors, namely, foreseeability, with respect to duty under the common law, the Court did not adopt the Patton factors as an analysis for negligent failure to warn.

In any event, although the factors set forth in Patton need not be examined, addressing foreseeability, a factor that Petitioner contends "weighs heavily in favor of imposing a duty on" Respondents, leads to the determination that duty in this case is not established based on a foreseeability analysis. As acknowledged in Patton, 381 Md. at 637, 851 A.2d at 571, and as the Majority acknowledges, see Maj. Slip Op. at 9, foreseeability "alone does not suffice to establish a duty[.]" (Citation and internal quotation marks omitted). Indeed, as the Court of Special Appeals observed, "even when a person's conduct could foreseeably result in harm to others, the Court of Appeals has repeatedly refused to recognize a duty in tort if it would expose a person to liability to 'an indeterminate class of people.'" May, 219 Md. App. at 437, 100 A.3d at 1291 (citations omitted). In other words, this Court has not adopted a pure foreseeability approach to determine the existence of a duty; i.e., this Court has not imposed a duty in each and every case in which an injury is foreseeable.

The foreseeability of harm caused by a replacement part—if, indeed, foreseeable— is neither dispositive of the question of whether a duty exists nor a predominant factor to be considered. See Maj. Slip Op. at 17. To adopt a pure foreseeability approach would be a slippery slope leading to limitless liability. See Wood, 119 Md. App. at 34, 703 A.2d at

- 17 -

1331 (The Court of Special Appeals held that Ford had no duty to warn of dangers associated with asbestos-containing replacement parts that others made or sold, even though such dangers were "associated with the foreseeable uses of its vehicles"; the Court noted that such an argument "obscure[d] the fact that [Mrs. Wood] really [was] attempting to hold Ford liable for unreasonably dangerous replacement component parts that it neither manufactured nor [otherwise] placed into the stream of commerce."); see also Faddish, 881 F. Supp. 2d at 1371 ("[A] manufacturer's duty to warn, whether premised in negligence or strict liability theory, generally does not extend to hazards arising exclusively from *other* manufacturer's products, regardless of the foreseeability of the combined use and attendant risk." (Emphasis in original)); O'Neil, 266 P.3d at 1004, 1005 ("California law does not impose a duty to warn about dangers arising entirely from another manufacturer's product, even if it is foreseeable that the products will be used together. . . . [T]he foreseeability of harm, standing alone, is not a sufficient basis for imposing strict liability on the manufacturer of a nondefective product, or one whose arguably defective product does not actually cause harm." (Citation omitted)); Braaten, 198 P.3d at 501 ("[W]hether the manufacturers knew replacement parts would or might contain asbestos makes no difference because such knowledge does not matter[.]").

Faced with the untenability of a pure foreseeability analysis and the general inapplicability of the Patton factors, the Majority ultimately concludes:

[T]he duty to warn in this context exists in the limited circumstances when[:] (1) a manufacturer's product contains asbestos components, and no safer material is available; (2) asbestos is a critical part of the pump sold by the manufacturer; (3) periodic maintenance involving handling asbestos gaskets and packing is required; and (4) the manufacturer knows or should know of

the risks from exposure to asbestos.

Maj. Slip Op. at 17. Put simply, this holding has no support whatsoever in Maryland case law and is simply a recitation of the circumstances of the case.

In sum, for the above reasons, I would reaffirm the long-standing and heretofore unbroken principle that manufacturers of products cannot be held liable for failing to warn of the dangers of replacement or later-added parts that they neither manufactured nor otherwise placed into the stream of commerce. In my view, in this case, having neither manufactured, marketed, sold, nor otherwise placed into the stream of commerce the replacement or later-added parts that led to Mr. May's exposure to asbestos and subsequent injury, Respondents cannot be held liable for a failure to warn of the dangers of those asbestos-containing products.[3] Indeed, there was no duty to warn where Respondents did

---

[3]I am not persuaded by the various other arguments that Petitioner raises in an attempt to assert that Respondents liable for failing to warn about the dangers of replacement or later-added parts that they did not manufacture, market, sell, or otherwise place into the stream of commerce. For example, Petitioner contends that the hazard that Mr. May encountered (asbestos-containing parts) was identical to the hazard as of the time of sale because the original pumps consisted of asbestos-containing parts. It is illogical, however, to hold a defendant liable for having made or sold a product that was similar—perhaps even identical—to the product that actually caused a plaintiff harm. Maryland courts have not adopted such a theory of liability; indeed, such a theory runs counter to well-established precedent that a manufacturer can be held liable only for injury that is caused by products that the manufacturer actually manufactured, marketed, sold, or otherwise placed into the stream of commerce. As such, I would reject Petitioner's attempt to set forth another theory of strict liability. For much the same reason, I would conclude that Petitioner's "substantial modification" argument is a red herring. Here, the Court is not confronted with an original product which was substantially modified and then caused injury. This case does not involve consideration of whether a product was substantially modified or not, but instead whether a manufacturer can be held liable for a failure to warn of dangers of another's replacement part. For the above reasons, I would decline to extend strict liability in this fashion.

not manufacture, sell, market, or otherwise place into the stream of commerce the parts that caused injury to Mr. May. The outcome reached by the Majority in this case stands against fundamental principles of Maryland case law. I would affirm the judgment of the Court of Special Appeals.

For the above reasons, respectfully, I dissent.

Judge Battaglia has authorized me to state that she joins in this opinion.